**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William C. PAGE, Defendant-Appellant.**

**No. 86–2725.**

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1987.

---

Michael G. McGuire (Carl Hughes with him on the briefs), Oklahoma City, Okl., for defendant-appellant.

Robert E. Mydans, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before LOGAN, BARRETT and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

This appeal is the latest chapter in the case of William C. Page, a former prosecutor and judge who was convicted in 1983 after a jury trial of engaging in racketeering activities affecting interstate commerce, in violation of 18 U.S.C. § 1962(c), and of obstructing, delaying, and affecting interstate commerce by means of extortion under color of official right, in violation of 18 U.S.C. § 1951. Page now challenges the

district court's denial of his second motion for new trial.

The background facts are set forth in an earlier opinion of this court, *United States v. Page*, 808 F.2d 723 (10th Cir.1987) (*Page I*), in which we upheld the convictions and the district court's denial of the first motion for a new trial. In this appeal, Page advances three arguments in favor of a new trial: (1) the recantation by a key prosecution witness, Richard Riley, constitutes new and material evidence; (2) the prosecution withheld vital evidence required to be revealed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) the trial judge wrongly refused to recuse himself from hearing the second motion for new trial. We reject all of these arguments.

## I

■ The government argues as a threshold matter that Page has waived the right to appeal the district court's disposition of the Riley recantation. Essentially, the government contends that Page's notice of appeal, which refers to the order entered on "the 3d day of November, 1986," I R. tab 11/12/86, does not encompass the district court's decision on the recantation issue, discussed in an order entered on November 5, 1986. We disagree.

Although a November 5 order did treat the issue and denied a new trial, the court had already done the same thing, without extensive discussion, on November 3: "Defendant Page has filed a Second Motion for New Trial Based Upon Newly Discovered Evidence, premised on Richard Riley's recantation of his trial testimony.... The court concluded, subsequent to a hearing held regarding the recanted testimony, that a new trial was not warranted on that ground." I.R. tab 11/3/86 at 1. Page's appeal of the recantation motion is properly before this court.

## II

■ A motion for new trial "is not regarded with favor and is granted only with great caution, being addressed to the sound discretion of the trial court." *United States v. Allen*, 554 F.2d 398, 403 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977). The district court rejected all of Page's arguments for a new trial, and we review its judgment under an abuse of discretion standard. *United States v. Steel*, 458 F.2d 1164, 1166–67 (10th Cir.1972).

### A

■ Page first offers new evidence in the form of recanted testimony by the government's chief witness, Richard Riley. This circuit has an established standard for new trials based on newly discovered evidence:

> "The newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such as would probably produce an acquittal; and a new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial."

*Allen*, 554 F.2d at 403. When the new evidence consists of a recantation, "the trial court must first be satisfied that the challenged testimony was actually false." *United States v. Bradshaw*, 787 F.2d 1385, 1391 (10th Cir.1986). To make this finding, the trial court ordinarily must conduct an evidentiary hearing to evaluate both the credibility and the impact of a recantation. *United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir.1984), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986).

■ Riley, in an affidavit, recanted his damning testimony against Page. After holding an evidentiary hearing, the district court concluded that "both Riley's affidavit and his testimony at the hearing were false." Order Denying Defendant's Second Motion for New Trial (based on witness' recantation) at I R. tab 11/5/86 at 2. The court based its holding on Riley's demeanor, his motives in attempting to recant his trial testimony, and the fact that other evidence at trial corroborated the substance of Riley's trial testimony. *Id.* at 2–3. In sum, the district court held an evidentiary hearing and supported its hold-

ing with reasons, as we suggested as the proper course in *Ramsey*. In *Page I*, we noted that Page "was convicted primarily out of his own mouth; the most damaging evidence at trial came from his recorded conversations with Riley." 808 F.2d at 731. We find no abuse of discretion in the district court's rejection on the basis of Riley's recantation.

### B

Page next contends that the prosecution violated the *Brady* rule by intentionally and prejudicially withholding exculpatory evidence from the defense. Specifically, Page contends that Assistant United States Attorney Wesley C. Fredenburg possessed Mid-States Distributing Company ledgers which categorized payments from Richard Riley to Page as "back attorney's fees" rather than bribes. The record indicates that the defense repeatedly requested but did not receive these ledgers from Fredenburg and that the district court itself sought the production of any ledgers in Fredenburg's possession. Fredenburg denied several times having any such ledgers. Most of Mid-States' accounting records were in the possession of the Internal Revenue Service for a time, but were turned over to Fredenburg after Riley filed a consent form on behalf of Mid-States. Mid-States' accountant swore in an affidavit that, "included in those books and records ... were various ledgers and other accounting documents" which described the payments to Page as legal fees. I R. tab 3/19/86, Bray Affidavit at 2. We now assume Fredenburg possessed but did not turn over financial records that could be described as a ledger.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where *the evidence is material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196 (emphasis added). At the time of the trial, in 1983, the *Brady* standard of materiality varied according to the knowledge of the prosecution and the specificity of the defendant's request. *See United States v. Agurs*, 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Bowen v. Maynard*, 799 F.2d 593, 603 (10th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986). The applicable standard in the instant case, in which the defendant made a specific request, required the verdict to be set aside if "the suppressed evidence might have affected the outcome of the trial." *Agurs*, 427 U.S. at 104, 96 S.Ct. at 2398. Recently, the Supreme Court enunciated a unified standard of materiality, which sets aside verdicts "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985) (Blackmun, J., joined by O'Connor, J.). *See also* concurring opinion of White, J., joined by Burger, C.J., and Rehnquist, J., *id.* at 685, 105 S.Ct. at 3385.

We hold that, under either the *Agurs* or *Bagley* framework, the exculpatory ledgers do not satisfy the materiality requirement of *Brady*. First, the ledgers would have provided merely cumulative evidence that Riley described his payments to Page as past attorney's fees rather than bribes. Page presented evidence at trial on this precise point, in the form of cancelled checks with "attorney's fees" notations and a schedule from his income tax return showing the deduction for attorney's fees. *See Page I*, 808 F.2d at 733. The ledgers, being cumulative, "probably would not produce an acquittal, and, therefore, did not provide a basis for granting a new trial." *United States v. Sutton*, 767 F.2d 726, 729 (10th Cir.1985). Second, Page could have obtained essentially the same evidence by calling Bob Bray, the accountant for Mid-States, to testify about the contents of the ledgers. "[A] new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial." *Allen*, 554 F.2d at 403. Finally, the proof of Page's guilt was very

strong; the ledgers would not have mitigated the impact of the tape-recorded, self-incriminating remarks of Page. The district court did not abuse its discretion by denying the motion for new trial.

## C

■ The defense also urges that a new trial should be granted as a sanction against prosecutorial misconduct, i.e., the intentional withholding of exculpatory evidence. We reject this plea. The *Brady* sanction depends on the nature of the undisclosed evidence rather than the culpability of the government. It balances the due process right to material exculpatory evidence, *see Brady*, 373 U.S. at 86–87, 83 S.Ct. at 1196, with the right of prosecutors not to open their entire files to the defendant's scrutiny, *see Agurs*, 427 U.S. at 109, 96 S.Ct. at 2400 ("If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice"); *Page I*, 808 F.2d at 733. *Brady* and its progeny allow the prosecutor to decide what is material; the remedy of a new trial is based on the correctness, not the motive, of this decision. If the prosecutor in fact has violated ethical or legal canons in his discharge of *Brady* obligations, the proper remedy is a disciplinary action against him, rather than a new trial for the defendant.

## III

■ Finally, Page argues that he is entitled to a new trial because of the district court judge's failure to recuse himself from considering the Second Motion for New Trial.[1] The root of the recusal issue is the receipt on July 22, 1983, by Judge Ralph G. Thompson, the district judge in this case, of a chain-of-custody letter from H.C. Longley of the Internal Revenue Service (the "Longley letter"). *See* Exhibit B to Addendum to Second Motion for New Trial Based on Newly Discovered Evidence, I R. tab 5/23/86. This document informed Judge Thompson that the Internal Revenue Service recently had delivered "a substantial volume of original records obtained by summons from Mid-States Distributing Products, Inc." to Assistant United States Attorney Fredenburg. *Id.* at 1. Judge Thompson placed this letter under seal and never informed the parties that he had received it, despite inquiries by defense counsel about its possible existence. Both before and after the court's receipt of the Longley letter, Page's attorneys sought and received Judge Thompson's assistance in obtaining the ledgers of Mid-States.

Page aggrandizes Judge Thompson's nondisclosure of the Longley letter into evidence of prejudicial bias against the defense. According to Page, the letter should have alerted the judge that Fredenburg possessed the ledgers; therefore, Judge Thompson concealed his personal knowledge of the ledger by failing to mention the letter, either at trial or during the hearing on the First Motion for New Trial. This silence, Page argues, suggests a personal bias against the defendant, which would require recusal under 28 U.S.C. § 455(a). Alternatively, he asserts that the judge's contemporaneous awareness of the ledgers' whereabouts during the trial and subsequent proceedings constitutes "personal knowledge of disputed evidentiary facts," 28 U.S.C. § 455(b)(1), rendering the judge incompetent to consider the *Brady* motion for new trial. We do not agree.

The Longley letter made no mention of any Mid-States ledgers; the general reference to "original records" was simply too vague to charge Judge Thompson with personal and specific knowledge of the ledgers' location. Judge Thompson declared that he "saw no apparent significance in the letter's contents, saw no need to show it to counsel, and simply placed it under seal and filed it." I.R. tab 11/3/86 at 6. This adequately explains his silence. Only in retrospect, after the post-trial production

---

1. We note the inappropriateness of Page's suggested remedy of a new trial for the refusal to recuse. Page sought recusal in conjunction with a post-trial motion; assuming merit to the allegation of bias, the remedy should be to require a new judge to give an unbiased reconsideration of this post-trial motion, rather than to grant the motion.

of new documents and affidavits, does the Longley letter's relevance to the ledgers become apparent.

Judge Thompson demonstrated his conscientiousness and impartiality at trial by closely questioning the government about the location of the ledgers and any other evidence concerning the description of Riley's payments to Page. *See, e.g.*, VI R. 2298 ("Whoever it is in Washington that is making the search [for this evidence] may not have the same sense of urgency that we may have"). Further, Judge Thompson recognized the ledgers as *Brady* material and correctly placed the burden of production on the prosecution:

> "THE COURT: The government has acquired the terms as I directed. They have searched for Brady material. They know their obligations and represent that there is nothing there."

V R. 2036–37. Short of personally searching the prosecutor's files—an extraordinary and manifestly unnecessary action, especially considering the cumulative nature of the ledgers—there is nothing further that Judge Thompson could or should have done.

Judge Thompson's exemplary conduct presiding over the trial and post-trial proceedings refutes Page's statutory claims for recusal. Section 455(a) requires recusal of a judge "in any proceeding in which his impartiality might reasonably be questioned." *Id.* "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). The Fifth Circuit has enunciated an exception to the requirement of extrajudicial bias, when "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). *See*

*United States v. Bray*, 546 F.2d 851, 860 (10th Cir.1976).

Page comes within neither the rule of, nor the exception to, extrajudicial bias. He fails to allege facts, and our review of the record reveals none, sufficient to show that a reasonable person, *see United States v. Gigax*, 605 F.2d 507, 511–12 (10th Cir.1979), would suspect Judge Thompson of bias. The trial transcript does not indicate any judicial bias whatsoever, let alone the "pervasive bias and prejudice" necessary when recusal is sought on the basis of attitudes developed during the course of judicial proceedings.

Section 455(b)(1) calls for recusal when a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* This rule applies to knowledge which the judge obtained extrajudicially, *e.g.*, through prior representation of a party, or by witnessing the events at issue in the proceeding. Section 455(b)(1) does not apply to knowledge obtained in the course of related judicial proceedings. *United States v. Patrick*, 542 F.2d 381, 390–91 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). *See Grinnell Corp.*, 384 U.S. at 583, 86 S.Ct. at 1710; *Bray*, 546 F.2d at 859. Since Page bases his § 455(b)(1) motion on knowledge obtained by Judge Thompson during the trial, the requirements of this section are not met and recusal is unnecessary.

We note finally that the decision to recuse is left to the sound discretion of the judge. *Shadid v. Oklahoma City*, 494 F.2d 1267, 1268 (10th Cir.1974) (per curiam). Our review of the record confirms that Judge Thompson did not abuse his discretion by refusing to recuse himself.

The denial of a new trial is, in all respects, AFFIRMED.