**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellants**

v.

**James David THORNBRUGH, Defendant–Appellant, Cross–Appellee.**

**Nos. 89–5166, 89–5173.**

United States Court of Appeals, Tenth Circuit.

April 13, 1992.

Vicki Mandell–King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, with her on briefs), for defendant-appellant, cross-appellee.

Kathryn H. Phillips, Asst. U.S. Atty., Tulsa, Okl. (Tony M. Graham, U.S. Atty., with her on brief), for plaintiff-appellee, cross-appellant.

Before HOLLOWAY, BRIGHT,[*] and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

James David Thornbrugh was convicted of three counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) & (d) (1988), and three related counts of possession of firearms during the commission of a crime of violence under 18 U.S.C. § 924(c)(1) (1988). On appeal, Thornbrugh raises several challenges to his conviction and also contends that his sentence was improperly enhanced under section 924(c). The court on its own motion ordered rehearing en banc in this case and in *United States v. Abreu*, No. 89–4145, limited to consideration of the proper interpretation of the enhancement provision in section 924(c)(1). Accordingly, Thornbrugh's sentencing argument is addressed in the en banc opinion of this court, filed simultaneously with this opinion. *See United States v. Abreu*, 962 F.2d 1447 (10th Cir. 1992). Here we resolve the remaining issues Thornbrugh raises with respect to his conviction. He claims that: (1) the prosecutor's remarks during closing arguments violated his due process rights; (2) newly discovered evidence merits a new trial; (3) the government wrongly withheld exculpatory evidence; (4) the prosecution improperly alluded to his prior bank robbery convictions; and (5) the cumulative errors at trial require reversal. We conclude that these assertions do not require reversal of his conviction.

I.

FACTS

Thornbrugh was indicted on three counts of armed bank robbery and three related gun charges. The indictment filed against him specifically charged the robberies of Local American Savings & Loan on January 6, 1989, of Continental Federal Savings & Loan Association on January 24, 1989, and of Village South National Bank on March 11, 1989. He was also charged with three counts of carrying a firearm in relation to a crime of violence, referring to the three robberies charged in the first part of the indictment.

The government's key witness at trial was Thornbrugh's accomplice, Gary Sewell, who had pled guilty to two of the three bank robberies. Sewell testified that in each robbery he stood by the door as Thornbrugh jumped over the teller counter and emptied the bank's registers. Sewell also testified that in each robbery Thornbrugh selected the bank to rob, supplied the guns (a .357 Wesson and a .380 Browning), and shouted orders for everyone to get on the floor. Sewell said that during each robbery he and Thornbrugh wore gloves and masks made from stockings.

Proof at trial revealed the following chronology with respect to the crimes. On January 6, 1989, Sewell and Thornbrugh traveled to Local American Savings & Loan in Thornbrugh's Chevrolet pickup and parked it two to three blocks away. After robbing the bank in less than three minutes, they ran behind a shopping center, climbed over a fence, and ran past a mail carrier. Upon arriving at Thornbrugh's pickup, they drove away followed by the mail carrier, at whom Thornbrugh pointed a gun.

On January 21, 1989, Sewell and Thornbrugh traveled to the Continental Federal Savings & Loan in Sewell's silver Camaro.

---

[*] Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

As before, they were in the bank for under three minutes. They left in the Camaro, which Thornbrugh drove to his pickup in a parking lot. He then left in his truck, taking the money, guns, and masks. Meanwhile, Sewell drove the Camaro to the Falls Apartments, where he was to meet Thornbrugh to split the money. A police officer questioned Sewell at the apartments. Upon searching the Camaro, the police officer found Thornbrugh's boots, belt, wallet, and driver's license. Sewell was not arrested at that time.

On March 11, 1989, Sewell and Thornbrugh robbed the Village South National Bank. They drove to the bank in a brown Ford Pinto Sewell bought to use in the bank robbery, and robbed the bank following the same plan as before. After the robbery, Thornbrugh drove the Pinto to a Ford LTD which they had parked in the general neighborhood of the bank. Special Agent McDade, United States Secret Service, and Larry Choate, president of Village South National Bank, had pursued the robbers at a distance following the robbery. Sewell put the money, guns, and masks in the trunk of the LTD and dropped Thornbrugh off at his pickup. Both McDade and Choate observed the license tag on the back of the pickup truck which Thornbrugh drove off. They recalled the license tag as Kansas number CU—–151. They chose to follow Sewell, and he was subsequently arrested.

After Sewell's arrest, several items were recovered from the Ford LTD including a Browning .380 automatic, a Don Wesson .357 revolver, two nylon stocking masks, two pairs of brown gloves, one black and one blue baseball cap, items of personal clothing, and $1,647.00 in cash. On March 15, FBI Agent Jo Deatherage was present at Thornbrugh's home during his arrest. She observed a Chevrolet pickup parked in the driveway, with a Kansas license tag number, CUI–151.

Several eyewitnesses to each of the robberies testified and offered descriptions of the robber who took the cash. Most of the eyewitnesses recalled that the robber was approximately six-feet tall, although some descriptions placed the robber between five-ten and six-feet. Thornbrugh is about six-two. No eyewitness except Sewell placed Thornbrugh at the scene of any of the robberies. Thornbrugh offered several alibi witnesses, including his father, coworkers, employer, and his employer's wife, all of whom confirmed Thornbrugh's alibis for each of the robberies.

Thornbrugh was convicted on all counts under 18 U.S.C. §§ 2113(a) & (d) and 924(c). On the three robbery counts, the district court sentenced Thornbrugh as a career offender with a total offense level of 34 and a criminal history level of VI. The imprisonment range at that level is from 262 to 327 months. With respect to the gun charges, the district court construed section 924(c) to require mandatory sentences of five years on the "first" count (count four), and enhanced sentences of twenty years for each "second or subsequent conviction" under section 924(c) (counts five and six). Thornbrugh therefore received an additional forty-five years on the section 924(c) gun charges. When added to the guideline range of 262 to 327 months, the additional forty-five years produced a possible sentence range of 802 to 867 months. The court departed downward based on its conclusion that the Sentencing Commission did not adequately consider "the effect of the cumulative sentence of 45 years mandatory ... [as it] relates to the minimum guideline range required on Counts 1, 2 and 3." Rec., vol. XII, at 16. It therefore departed downward to a total of 543 months imprisonment. *Id.* at 16.[1]

---

1. In the en banc opinion filed this day, we hold that the court erred in construing section 924(c) to require enhancement for second or subsequent convictions under the circumstances here.

A remand for resentencing is therefore necessary. Accordingly, we do not address the government's cross-appeal alleging error in the downward departure.

## II.

### PROSECUTOR'S REMARKS DURING CLOSING ARGUMENT

■ Thornbrugh contends that his right to a fair trial was denied by the prosecution's inappropriate comments during closing arguments. Thornbrugh alleges prosecutorial error in the following exchange:

> "Mr. Lunn [defense counsel]: Well, what about the problems with Sewell? There are plenty of them. He changed his statements numerous times. You've heard that he has made many deals during the course of his life. It's terrible to think that a man with five felony convictions can possibly—
>
> Mr. Baker [prosecution]: If Your Honor please, that is an absolute untruth. The man said he had two felony convictions. This is misquoting the record. I object to it.
>
> Mr. Lunn: The man has—
>
> Mr. Baker: Just a minute, please.
>
> The Court: Ladies and gentlemen, you heard the evidence on that subject. I'm [sic] leave it to you to recall it. Proceed.
>
> Mr. Lunn: The man has pled guilty three times to bank robbery, and he has pled guilty twice to burglary.
>
> Mr. Baker: That again is untrue, Your Honor, and I ask you again to admonish this man to quit lying to the jury. He said he had been convicted twice. He pled guilty to two bank robberies and not three. That's the record in the case. Please admonish this man to stop lying.
>
> The Court: You heard the evidence, ladies and gentlemen. Proceed."

Rec., vol. X at 696–697.

Defense counsel did not object to these comments when they were made. We will therefore reverse only for "plain error." *United States v. Young,* 470 U.S. 1, 13–14, 105 S.Ct. 1038, 1045–46, 84 L.Ed.2d 1 (1985); *United States v. Lonedog,* 929 F.2d 568, 570 (10th Cir.1991). "Plain error is '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" *Id.* (quoting *United States v. Henning,* 906 F.2d 1392, 1397 (10th Cir.1990)).

Although attacks on defense counsel may constitute prosecutorial misconduct warranting reversal, the prosecutor's comments here were responsive to defense counsel's statements. *See Young,* 470 U.S. at 12, 105 S.Ct. at 1044. As we have stated previously: "[T]he fact that the prosecutor was responding to defense counsel's closing argument did not give him carte blanche to make improper statements. But the fact that the statement was part of a response and not part of a general attack on defense counsel lessened its effect." *United States v. Lowden,* 900 F.2d 213, 216 (10th Cir.1990) (citation omitted). The substance of the prosecutor's objection expressed no opinion on the question of Thornbrugh's guilt. *Compare United States v. Rios,* 611 F.2d 1335, 1343 (10th Cir.1979) (disapproving prosecutor's expression of personal belief in defendant's guilt), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981). Furthermore, the prosecutor's statement that the record reflected that Sewell had two prior felony convictions, not five, had a factual basis. *Compare Rios,* 611 F.2d at 1342–43 (unfounded remarks held prejudicial error); *see also* rec., vol. VIII, at 353 (evidence of Sewell's convictions at trial). The likelihood of prejudice was minimized by the district court's admonition to the jury prior to closing that closing arguments are "not evidence in the case at all." Rec., vol. X, at 667; *see United States v. Ellzey,* 936 F.2d 492, 498 (10th Cir.1991) (residual prejudice arising from prosecutor's comments in closing eliminated by court's limiting instruction). Under these circumstances, we cannot find plain error.

■ The prosecutor also stated in his rebuttal remarks during closing:

> "Mr. Baker: While [defense counsel] was talking about this license tag that Agent McDade and Jo Deatherage said they didn't have any trouble reading, I wonder why he didn't explain to you who tampered with evidence in a federal criminal case and mutilated this license tag. He omitted somehow to tell you that, didn't he?"

Rec., vol. X at 699. Mr. Lunn objected to this statement, contending that "there has been no evidence of [tampering] whatsoever." *Id.* at 699–700. His objection was overruled. *Id.* at 700.

■ Because this comment was the subject of an objection, we assess it under the harmless error standard. *See Lonedog,* 929 F.2d at 572; *see also United States v. Alexander,* 849 F.2d 1293, 1296 (10th Cir. 1988); *United States v. Taylor,* 800 F.2d 1012, 1018 (10th Cir.1986), *cert. denied,* 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987).

> "To determine whether defendants have been deprived of a fair trial, we must view the improper remark in the context of the entire record before the jury. We will not overturn the convictions unless the prosecutor's misconduct 'was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented.'"

*United States v. Espinosa,* 771 F.2d 1382, 1401 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985) (citations omitted). In evaluating whether a prosecutor's comment had an impermissible effect on the jury's deliberations, we consider: " 'the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole.' " *Lonedog,* 929 F.2d at 572 (quoting *United States v. Martinez–Nava,* 838 F.2d 411, 416 (10th Cir.1988)).

We conclude there was no reversible error with respect to the comments made during the prosecution's rebuttal. Although defense counsel contends that the statements "implicate[ ] Mr. Lunn [defense counsel] with tampering with evidence," Appellant's Opening Brief at 26, our reading of the record convinces us that this oblique reference to the alteration of the license tag number was not such as "to influence the jury to render a conviction on grounds beyond the admissible evidence presented." *Espinosa,* 771 F.2d at 1401. In light of the strength of the evidence presented by the government in this case, if the statement was error, it was harmless.

## III.

## DENIAL OF MOTION FOR NEW TRIAL

■ A motion for a new trial is not regarded with favor and should only be granted with great caution. *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir.1991); *United States v. Page,* 828 F.2d 1476, 1478 (10th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). The denial of such a motion is addressed to the sound discretion of the trial court. *Id.*

### A. Newly Discovered Evidence

Thornbrugh first argues that the district court erred in denying his motion for a new trial based on two instances of newly discovered evidence. Thornbrugh's new evidence consists of a statement by Woody Woodward that he sold the .357 Wesson to Gary Lynn Sewell, and the existence of two witnesses to the South National Bank robbery who would provide exculpating descriptions of the bank robber.

■ Thornbrugh argues that the trial court abused its discretion in denying his new trial motion without an evidentiary hearing. However, the district court implicitly assumed that the evidence was true and considered its impact on the outcome at trial. Rec., supp. vol. II, doc. 58 at 7–8. No evidentiary hearing to determine credibility was therefore necessary. *See United States v. Ramsey,* 726 F.2d 601, 605 (10th Cir.1984).

■ In order for new evidence to merit a new trial, it "must be more than impeaching or cumulative; it must be material to the issues involved; it must be such as would probably produce an acquittal; and a new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial." *Page,* 828 F.2d at 1478 (quoting *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977)). Under this standard, we are not persuaded that the

district court erred in denying the new trial motion on the basis of new evidence.

██ With respect to the statement of Woody Woodward, the district court stated in its order denying a new trial that the new evidence would, at best, raise the possibility that Sewell used this gun in the robbery rather than a gun supplied to Sewell by Thornbrugh. Rec., supp. vol. II, doc. 58 at 7. The evidence would therefore be cumulative as to Thornbrugh's denial of any participation in the robberies and impeaching as to Sewell's testimony that Thornbrugh supplied both guns for the robberies. *Id.* The court also said "having heard all the evidence, that this possibility of additional cumulative and impeachment evidence would not produce (and would not have produced), in all probability, acquittal." *Id.* at 7–8. Given the record in this case and the district court's careful consideration of the impact that the new evidence would have had on the outcome, we conclude there was no abuse of discretion in denying a new trial based on the statement of Woody Woodward.

██ The district court similarly concluded that the testimony of the two identification witnesses did not merit granting the motion for a new trial:

"[S]uch testimony ... would have been cumulative as to the robbers being white males and impeaching as to the lack of beards and gray or graying hair of either of the suspects. It is clear Defendant's hair is predominantly dark, not gray. Neither witness nor both in the Court's estimation, would produce or would have produced, probably, an acquittal."

*Id.* at 8. Again, our review of the record and the district court's order indicates that the court carefully considered the probable impact of the new evidence under the appropriate legal standard and committed no abuse of discretion by denying the new trial on the basis of new evidence.

## B. Withholding Exculpatory Evidence

██ Thornbrugh also contends that a new trial is warranted because exculpatory evidence was withheld by the govern-

ment. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where *the evidence is material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Page,* 828 F.2d at 1479 (quoting *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), and adding emphasis). Suppressed evidence is deemed material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (Blackmun, J., joined by O'Connor, J.)). In making this determination, we view the suppressed evidence's significance in relation to the record as a whole. *United States v. Wolf,* 839 F.2d 1387, 1391 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

██ Thornbrugh contends that the government suppressed the testimony of Agent Deatherage in violation of his due process rights, thus entitling him to a new trial. According to Thornbrugh, Agent Deatherage gave conflicting descriptions of the pickup used in connection with the robberies in two separate affidavits. Agent Deatherage's affidavit dated March 13, 1989, described the truck identified by Agent McDade on March 11 as a "white GMC pickup with a Kansas tag." Rec., Supp. Vol. II, doc. 45, exh. B. Agent Deatherage's affidavit dated April 12, 1989 stated that McDade observed a "tan and white Chevrolet pickup with a Kansas tag CU——151." *Id.* at exh. C. Thornbrugh also contends that the prejudice arising from this alleged suppression was compounded by the fact that Agent Deatherage did not recall preparing the separate affidavits and denied any inconsistencies between descriptions of the truck.

The alleged suppression arising out of Agent Deatherage's conduct does not merit

a new trial because it does not raise a "reasonable probability" of a different result. *Page*, 828 F.2d at 1479. The district court concluded that it is unlikely the comparison of the two affidavits at trial would have affected the outcome because "these affidavits ... are far more in harmony than in conflict." Rec., supp. vol. II, doc. 58 at 5. As explained by the district court:

> "The Court is aware and the record supports the very similar appearance of Chevrolet and GMC pickup vehicles, both being General Motors products. A later description of a 'GMC pickup' as being a 'Chevrolet pickup' is not, in the Court's mind, a serious variance. The pickup's color (white, later described in greater detail as tan and white) is more of an enlargement of description rather than a discrepancy. The license tag was more fully described to include the tag number as reported by Agent McDade. There is no discrepancy whatsoever as to the tag in the Deatherage affidavits."

*Id.* at 5–6 (footnote omitted).

The district court also relied on the availability at trial of the two affidavits to defense counsel in rejecting Thornbrugh's claim that exculpatory evidence was wrongly withheld.

> "The two affidavits were available to Defendant during trial. If Defendant considered the two Deatherage affidavits sufficiently conflicting it was incumbent upon him, through his counsel, to utilize the same during trial for impeachment purposes. Defendant argues the later affidavit was not 'introduced into evidence because it alleged that Defendant Thornbrugh had been picked up because of a parole violation.' The affidavit, in redacted form, was available for use but was not used—a tactical choice within the Defendant's control."

*Id.* at 6. The district court's conclusion in this respect is consistent with our decisions establishing that there is no violation of a defendant's right with respect to produc-

tion of exculpatory evidence when such evidence is available at trial. *See United States v. Behrens*, 689 F.2d 154, 158 (10th Cir.), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982); *United States v. Alberico*, 604 F.2d 1315, 1319 (10th Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

Thornbrugh also contends that the government withheld exculpatory evidence by failing to provide the defense with the correct escape route of the robbery suspects and the fact that there were two witnesses along the escape route, Darlene Slotterback and Darlene Rudner. The district court held that the testimony of the two new witnesses was cumulative, and that in light of the record it would not have created a reasonable probability of a different outcome. There was no abuse of discretion in denying the motion for a new trial on the basis of this "withheld" [2] evidence, because such evidence was not exculpatory.

Finally, Thornbrugh contends that exculpatory fingerprint evidence was improperly withheld. The record nowhere indicates that the prints would be exculpatory. In the absence of any support for the contention that the fingerprints constitute exculpatory evidence, we are precluded from reversing the district court's denial of a new trial based on the suppression of this evidence.

## IV.

## REFERENCE TO DEFENDANT'S PRIOR CONVICTIONS

Thornbrugh asserts that his right to a fair trial was compromised because the prosecution's witness, Gary Sewell, implied that Thornbrugh was an experienced bank robber by unfairly alluding to his prior convictions. The exchange at trial during defense counsel's cross-examination of Sewell was as follows:

---

2. We note that there is no clear evidence in the record that the government actually suppressed the correct escape route or the witnesses' statements. On appeal, the government maintains

that "the names and addresses of the [witnesses] were never supplied to the government by any investigating agency." Government Brief at 36–37.

"[Mr. Lunn] You weren't so to speak, led by a leash by your accomplice with regard to doing this robbery?

"[Mr. Sewell] I was told by my accomplice what to get and what to do. I'm not a bank robber. I don't know how.

"[Mr. Lunn] All right. I'd like to ask you questions about the second robbery...."

Rec., vol. IX, at 442–43. The trial transcript reveals that there was no objection to Sewell's remark. The alleged error is therefore reviewed under a plain error standard. *See Lonedog,* 929 F.2d at 570. Accordingly, we will not reverse unless the statement constituted "something ... so prejudicial ... that justice cannot have been done." *Id.*

Sewell's statement was not sufficiently prejudicial to constitute plain error. As the district court concluded in its order denying the new trial, "the statement made by ... Sewell ... was not prejudicial to Defendant's case, in that it makes no reference, by insinuation or otherwise to Defendant's prior record." Rec., supp. vol. II, doc. 58, at 4. We agree that Sewell's comment did not highlight Thornbrugh's prior convictions. Other cases where mistrials were requested suggest that, given the nature of Sewell's comment, a new trial is not warranted. *See, e.g., United States v. Kendall,* 766 F.2d 1426, 1437 (10th Cir.1985) (testimony that defendant had sold airplane to pilot who had used it in earlier drug smuggling venture), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *United States v. Walton,* 552 F.2d 1354, 1365–66 (10th Cir.) (testimony that defendant interviewed by FBI while in jail on another matter), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977); *United States v. Woodring,* 446 F.2d 733, 737 (10th Cir.1971) (testimony that defendant subject of unrelated criminal charge).

Thornbrugh contends that the error should be deemed prejudicial when one considers that the Government's case against Thornbrugh was a relatively weak one.

Our review of the record, however, confirms the conclusion of the district court that there was more than sufficient evidence for the jury to return a guilty verdict. Rec., supp. vol. II, doc. 58, at 8; *compare United States v. Sands,* 899 F.2d 912, 915–16 (10th Cir.1990).

## V.

## CUMULATIVE ERROR

Thornbrugh argues that even if no individual error warrants reversal, the cumulative effect of the errors at trial do. In *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (en banc), we stated that: "The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." The purpose of a cumulative error analysis is to address that possibility.

In this case, the district court explicitly stated in denying Thornbrugh's motion for a new trial that:

"In sum, the Court restates it heard all of the evidence, viewed the demeanor of all of the witnesses, considered all of the exhibits and heard all the argument and concludes there was more than ample evidence upon which the jury based its verdict. There was solid corroborative evidence in support of accomplice Sewell's testimony."

Rec., supp. vol. II, doc. 58 at 8. Our own review of the record also bears out the conclusion that the alleged errors and prosecutorial misconduct, viewed in the aggregate, did not have a prejudicial effect on the jury's verdict.

In sum, we AFFIRM Thornbrugh's convictions. However, we hold today in our en banc opinion that Thornbrugh's sentence was improperly enhanced for a second or subsequent conviction under section 924(c). Such an enhancement is only proper when the underlying offense was committed after a judgment of conviction on the prior section 924(c) offense. *See United States v. Abreu,* 962 F.2d 1447 (10th Cir.1992).

Accordingly, we REMAND for resentencing in light of our en banc opinion.