963 F.2d 383
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lloyd Michael REID, Defendant-Appellant.
 No. 91-5140.
 United States Court of Appeals, Tenth Circuit.
 May 12, 1992.
 
 Before STEHEN H. ANDERSON and BRORBY, Circuit Judges, and CAMPOS,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN E. ANDERSON, Circuit Judge.
 
 
 1
 Lloyd Michael Reid appeals from the denial of his motion for a new trial. Reid was convicted of conspiracy to distribute controlled substances and maintaining a place for drug distribution in violation of 21 U.S.C. § 846. After sentencing, and pursuant to Fed.R.Crim.P. 33, he filed a timely motion for a new trial based on newly discovered evidence. He claims that this evidence establishes that contrary to the government's position at trial, an undisclosed deal existed between the government and a key prosecution witness. The district court denied the motion holding that the government's failure to disclose the cooperation agreement had no bearing on the testimony of the witness. The court found that Reid had neither suffered any prejudice as a result of the nondisclosure nor been denied a fair trial. Order of Aug. 19, 1991 at 3. We conclude that the post-trial discovery of the cooperation agreement constitutes newly discovered evidence. However, since we are unsure whether the district court applied the proper standard in analyzing the effect of this evidence and since we have not been furnished a transcript of the trial, we vacate the order and remand for a reconsideration of Reid's motion.
 
 FACTS
 
 2
 Reid characterizes as new evidence a letter sent by the government approximately eight months after the trial to the state court sentencing judge of the key prosecution witness, Rhonda Grimmett. The letter "strongly urge[d]" the judge to exercise leniency on Grimmett's behalf because of her cooperation and testimony at Reid's trial.[1] Letter of March 8, 1990, at 1. Reid first learned of this letter approximately fifteen months after his trial. Reid asserts that this letter constitutes newly discovered evidence because: (1) the letter indicates that the government in fact made a deal with Grimmett inducing her to testify; (2) this agreement was concealed from Reid preventing him from properly impeaching Grimmett on the basis of bias; (3) the government repeatedly denied the existence of any agreement both at trial and on appeal in United States v. Reid, 911 F.2d 1456, 1458-59 (10th Cir.1990), cert. denied, 111 S.Ct. 990 (1991) (Reid I ); and (4) the letter was not disclosed by the government until after oral argument in Reid I. Appellant's Principal Br. at 2.
 
 
 3
 At trial, the government represented to the court that it had not entered a cooperation agreement with Grimmett. Grimmett testified vigorously on both direct and cross-examination that she was not pursuant to any agreement with the government. R.Supp.Vol. II at 4-5, 28, 36-38, 46.
 
 
 4
 On direct appeal, Reid sought a new trial arguing that having previously indicated its intention to enter into an agreement with Grimmett, the government should have disclosed that it failed to consummate that agreement. Reid I at 1460-61. We noted the district court's finding that consistent with the evidence presented to it at the time, although the government had initially indicated the presence of an agreement, the state court sentencing judge had never been contacted on Grimmett's behalf. Id. at 1460. We also noted that Reid "offered no evidence to undercut this finding." Id. Apparently, the government's position on direct appeal was consistent with its position at trial that no deals had been made with Grimmett to induce her testimony.
 
 
 5
 Subsequent to our decision in Reid I, Reid learned that the government had sent a letter to Grimmett's state court sentencing judge. That letter seemed to satisfy the government's obligation under the cooperation agreement with Grimmett, an agreement which the government denied having entered in arguments presented before two courts.
 
 
 6
 Reid then brought his timely Rule 33 motion. The government responded to the motion restating its position that Grimmett "had testified truthfully that no promises had been made to her." Order of August 19, 1991 at 2. The district court found that Grimmett's testimony had not been influenced by the government's post-trial letter and that Reid's new evidence did not show that Grimmett had testified falsely about this matter. Id. at 3.
 
 
 7
 As set out above, at trial, on direct appeal, and in responding in the district court to the motion now on appeal, the government took the position that it had not entered a cooperation agreement with Grimmett inducing her to testify. On this appeal, however, the government has altered its stance. The new government position is that "[t]he letter [Reid characterizes] as 'newly discovered' simply does exactly what the government said it would do in return for witness Grimmett's cooperation and testimony in the government's case-in-chief." Appellee's Br. at 6.
 
 DISCUSSION
 A. Newly Discovered Evidence
 
 8
 As a threshold question, we must decide whether the alleged undisclosed cooperation agreement was in fact newly discovered evidence. At first blush it seems it was not since in May 1989, the Assistant United States Attorney prosecuting the case informed Reid, in response to his pretrial motion for discovery of inducements, promises, and payments to prospective witnesses, of the existence of just such a cooperation agreement with Rhonda Grimmett. The government stated:
 
 
 9
 The government anticipates using Rhonda Grimmett as a witness in its case-in-chief. There is no written plea agreement with this witness, however, assurances were made to her that in return for her cooperation and testimony, if called as a witness in this case, the fact of her assistance to the federal government would be made known to her sentencing judge in state court.
 
 Appellee's Br. at 3 (emphasis added).[2]
 
 10
 However, at trial in June 1989, Grimmett testified on both direct and cross-examination that she had made no deal with the government for her testimony. R.Supp.Vol. II at 4-5, 28, 36-38, 46. Such testimony was, of course, subject to clarification by the government and impeachment by Reid. But, the government not only failed to clarify its arrangement with Grimmett, it actively obscured the situation by leading the court to believe that the arrangement disclosed to Reid before the trial was no longer in effect. That point is revealed by the following colloquy between the court and Reid's defense counsel when counsel unsuccessfully sought to elicit testimony from the government that the agreement in question did exist:
 
 
 11
 MR SHORT: [The Assistant U.S. Attorney's testimony as to whether there was an agreement] is very relevant if promises have been made.
 
 
 12
 THE COURT: Well, there were none. That is what the problem is. As far as-- Mr. Swartz [the AUSA] has assured the Court [that] no promises have been made [that] he knows of. Their witness has said no promises [have been] made, agent said no promises made. Mr. Swartz has explained why that is in the letter and that he intended to do it in the future, and it never occurred.
 
 
 13
 R.Supp.Vol. V at 4 (emphasis added). Thereafter, government counsel represented and argued to the jury that Grimmett had not been offered any inducement by the government for her testimony. R.Supp.Vol. III at 87-88, 92-94.
 
 
 14
 Government counsel repeatedly stressed the absence of an agreement with Grimmett during closing argument. In the opening portion of his summation, the prosecutor stated:
 
 
 15
 [Grimmett ] said she's not getting any kind of deal. No promises were made to her. She's not getting her time cut back or not getting her charges dismissed or anything. Her words were, "It's too late for that now. They didn't promise me anything." This man, the investigator didn't promise her anything. She said I didn't promise her. She said nobody promised her anything. That's the evidence in this case and she testified and she told you what happened out there.
 
 
 16
 Id. at 87-88 (emphasis added).
 
 
 17
 In his rebuttal summation, the prosecutor again stressed that Grimmett's testimony was especially credible because she had received no inducement to procure her testimony:
 
 
 18
 Alvin Clemmons, for a deal, for leniency, told you what he knew about this defendant's activities.
 
 
 19
 But, on the other hand, it's not a classic narcotics case, because Rhonda Grimmett came in here and testified with absolutely no deal. She told you she was doing 50 years. There was no way that anybody could help her at that point. That's what she told you. There's no evidence to the contrary of that position whatsoever except counsel's argument that there's got to be a deal, but there's no evidence of it, and he asked everybody in the case including the main person to benefit by it, Rhonda Grimmett.
 
 
 20
 There is no plea agreement. There's no deal. He never proved any evidence at all that she had any kind of a deal, and he attempted to do that through his cross examination of her. She told you, ladies and gentlemen, she's here to testify to the truth, and her motive, I suppose, is that she wants to see justice occur to this Defendant as it occurred to her. She's doing a lot of time for her acts out there, and she doesn't want to see him get away with it.
 
 
 21
 Id. at 92-93 (emphasis added).
 
 
 22
 The prosecutor returned a final time to the absence of any agreement with Grimmett in attacking the credibility of Reid's main witness. The AUSA asked the jurors, "Is he a believable witness in the face of Rhonda Grimmetts [sic] with no deals, in the face of those two 17 year old girls and in the face of Alvin Clemmons' testimony?" Id. at 94 (emphasis added).
 
 
 23
 Essentially, then, what we have is a situation where the court was given the impression that whatever agreement may have existed pretrial was no longer in effect, and both the court and jury evaluated Grimmett's testimony under the impression that no agreement for Grimmett's testimony existed. The effect of the government's misrepresentation was to prevent Reid's counsel from pursuing effective cross-examination and impeachment on this issue. See United States v. DeSoto, 950 F.2d 626, 630-31 (10th Cir.1991).
 
 
 24
 The post-trial discovery of the letter, which the government now concedes was executed in compliance with the original pretrial agreement, shows that the agreement was in effect at the time Grimmett testified. Accordingly, the letter constitutes newly discovered evidence as to that important matter.
 
 B. Effect of the Newly Discovered Evidence
 
 25
 The critical question is whether this newly discovered evidence of the government's promise to put in a good word for Grimmett in exchange for her cooperative testimony requires a new trial.
 
 
 26
 The mere fact that a given piece of evidence is newly discovered does not by itself compel a district court to grant a motion for a new trial. However, when the nondisclosure of a cooperation agreement with key prosecution witnesses implicates a defendant's due process rights under Brady v. Maryland, 373 U.S. 83 (1963), the proper inquiry is whether the evidence that was suppressed would "undermine confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985); see also United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir.1991); United States v. Thornbrugh, Nos. 89-5166, 89-5173, 1992 WL 72033, at *5-6, 1992 U.S.App. LEXIS 6623, at *15-16 (10th Cir. April 13, 1992).
 
 
 27
 In Abello-Silva, we addressed the proper standard to apply in a case like this, where the prosecution fails to disclose impeachment evidence useful to the defense that was specifically requested by the defense. There, we adopted the view that " '[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " Id. at 1180 (quoting Bagley, 473 U.S. at 682).
 
 
 28
 A court should make its assessment of "reasonable probability" in light of "the totality of the circumstances." Id. (quoting Bagley at 683). A court could reasonably conclude that the jury's judgment was not affected by a faulty disclosure or nondisclosure of a cooperation agreement if the remaining evidence in the case is "overwhelming and not subject to any reasonable doubt by the impeachment or elimination of [the witness'] testimony." Graham v. Wilson, 828 F.2d 656, 661 (10th Cir.1987), cert. denied, 484 U.S. 1069 (1988).
 
 
 29
 The district court did not make any findings on these issues. Instead, relying on the government's position that there was no agreement with Grimmett it found that without Grimmett's knowledge of any promises her testimony could not have been affected by the letter, and that Reid therefore suffered no prejudice sufficient to justify a new trial. It made no finding on the record regarding either its confidence in the outcome of the trial given this new evidence or whether the remaining evidence in the case was overwhelming.
 
 
 30
 As the Supreme Court and this court have made clear, promises to witnesses are undeniably important matters. They must be disclosed to the defendant, Giglio v. United States, 405 U.S. 150 (1972), and the disclosure must include "all the promises that have been made, not only those which they happen to consider important." United States v. Blackner, 721 F.2d 703, 708 (10th Cir.1983) (quoting United States v. Roberts, 570 F.2d 999, 1007 (D.C.Cir.1977)). This is so because "[p]romises made by the state to a witness in exchange for [her] testimony relate directly to the credibility of the witness." Moore v. Kemp, 809 F.2d 702, 719 (11th Cir.), cert. denied, 481 U.S. 1054 (1987). When promises of favorable treatment are not disclosed, the trier of fact lacks evidence necessary to make a fair assessment of the witness' credibility and testimony. See generally, Note, A Prosecutor's Duty to Disclose Promises of Favorable Treatment Made to Witnesses for the Prosecution, 94 Harv.L.Rev. 887, 891 (1981). Nondisclosure is especially serious when the "reliability of a given witness may well be determinative of guilt or innocence." Napue v. Illinois, 360 U.S. 264, 269 (1959).
 
 
 31
 This case is troubling to say the least. The finding that Grimmett did not know she had an agreement with the government is not persuasive because Reid's counsel was prevented from testing both her knowledge and her concept of an agreement by confronting her with the specific promise which the government admits was made to her. Thus, it is impossible to assess the existence or extent of this inducement on her testimony. And, the court could not fully assess the credibility of her denials.
 
 
 32
 Grimmett was not the only witness against Reid, but she was apparently the most prominent, and the government has done little in this appeal to demonstrate that other evidence against Reid was "overwhelming." Wilson, at 661. In particular, the government has not even bothered to obtain and submit to us a transcript of the trial so that we can review the evidence it presented.
 
 
 33
 From the briefs and partial record furnished to us we glean that the government's main witness was Grimmett and that the primary supporting witnesses were her daughter and another woman Grimmett considered to be her daughter. While in no way conclusive, it is at least plausible that these two individuals would follow Grimmett's lead. But that is a speculation on a speculation: that Grimmett was wholly or partially lying for a government promise, and that the other two witnesses tailored their testimony accordingly.[3]
 
 
 34
 On this record, we are unable to conclude whether this possibility is more than a speculation. In denying Reid's motion for a new trial, the district court found that Reid had not been prejudiced by the post-trial discovery of the government's agreement with Grimmett. It is likely that the district court, which is highly experienced in these matters, used prejudice in the sense required by Bagley and Abello-Silva, but we are unable to determine that for a certainty. And, lacking a transcript of the trial, we are unable to make an appropriate assessment ourselves. Accordingly, we vacate the order of the district court and remand the case for reconsideration of Reid's motion for a new trial.
 
 
 35
 VACATED and REMANDED.
 
 
 
 *
 Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The March 8, 1990, letter refers to Grimmett by the name of Rhonda Hawkins. Ms. Hawkins used both the surnames Hawkins and Grimmett, her maiden name, to identify herself. R.Supp.Vol. II at 3, 44. Throughout this opinion, we refer to her as Grimmett
 
 
 [2]
 The promise to Grimmett "in return for" her "cooperation and testimony" clearly constitutes an agreement. "A plea agreement involves quid pro quo." United States v. Broce, 781 F.2d 792, 817 (10th Cir.1986) (Barrett, J., dissenting) (citing United States v. Cross, 638 F.2d 1375 (5th Cir.1981)). While this case concerns a cooperation agreement and not a formal plea agreement, the quid in this case was the government's post-trial letter to the state court sentencing judge in exchange for the quo of Grimmett's helpful trial testimony. The government conceded the existence of this agreement both in its brief and at oral argument
 
 
 [3]
 We note that the prosecution bolstered Grimmett's credibility to the jury during closing argument by stressing that her testimony was supported by that of her daughters. The prosecutor noted:
 Now, she wasn't the only one that said that. She wasn't the only one that witnessed that, that told you about that. Both of her daughters, her 17 year old daughter--or her daughter and her niece that she was raising like a daughter, came in here and told you precisely the same thing. Girls with no reason to lie, nothing to gain, with no felony convictions. Two young girls, both of them with children, young children, came in here and said....
 They confirmed in every important respect the testimony of Rhonda Grimmetts [sic]. All three of them said the same thing....
 R.Supp.Vol. III at 86-87 (emphasis added). The AUSA also commented:
 But what about the 17 year old girls? They don't have any felony convictions, like Alvin Clemmons and like Rhonda Grimmett. They're not working off any kind of deal.... There's no deal with them. They were never impeached.... They were telling you the truth I submit, ladies and gentlemen. You must be the judge of that. Id. at 93. These arguments prove little. Having misled the court about the presence of a cooperation agreement with Grimmett, the prosecutor prevented defense counsel from engaging in effective cross-examination of the daughters on their possible bias in structuring their testimony to benefit Grimmett.