UNITED STATES of America,
Plaintiff–Appellee,

v.

J.C. CHATMAN, true name Jon Chatman,
Defendant–Appellant.

Nos. 91–6335, 92–6129.

United States Court of Appeals,
Tenth Circuit.

May 21, 1993.

Edward Y. Crandall, Oklahoma City, OK, for defendant-appellant.

Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, OK (Joe Heaton, U.S. Atty., with him on the brief for No. 91–6335; Timothy D. Leonard, U.S. Atty., Oklahoma City, OK, with him on the brief for No. 92–6129), for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and O'CONNOR, District Judge.*

TACHA, Circuit Judge.

J.C. Chatman appeals his conviction for possession with intent to distribute, and distribution of, cocaine base in violation of 21 U.S.C. § 841(a)(1), conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846, and using a telephone to facilitate the conspiracy in violation of 21 U.S.C.

---

* Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

§ 843(b). Mr. Chatman was indicted along with six other people for participating in a conspiracy to traffic cocaine from Los Angeles to Oklahoma City. He was arrested in Oklahoma on February 19, 1991. The cases against Chatman and four codefendants were consolidated for trial and Chatman was sentenced to life imprisonment and five years supervised release.

On appeal, Chatman contends that the district court: (1) improperly denied severance; (2) failed to suppress evidence obtained through a warrantless vehicle search; (3) entered judgment where there was insufficient evidence to support the conviction; (4) admitted hearsay evidence; (5) erroneously applied the United States Sentencing Guidelines; and (6) improperly denied his motion for a new trial based on newly discovered evidence. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

## I. SEVERANCE

■ Mr. Chatman contends that the district court erred in failing to grant him a separate trial because the admission of a nontestifying codefendant's confession violated his rights under the Confrontation Clause of the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to

eliminate not only the defendant's name but any reference to his or her existence." *Id.* at 211, 107 S.Ct. at 1709; *see also United States v. Markopoulos*, 848 F.2d 1036, 1038–39 (10th Cir.1988).

Codefendant Ronnie Miller confessed to the police in a statement that implicated Chatman. Chatman made a pretrial motion for severance so that he would not be incriminated by Miller's confession when it was entered against Miller at trial. The district court denied the motion after the statement was redacted to remove any reference to Chatman, and an arresting officer testified to Miller's confession at trial.[1] The court instructed the jury to consider the statement "only as it relates to Defendant Ronnie Miller" and not "in any manner against any other Defendant in this case."

We find no *Bruton* violation because, as Mr. Chatman concedes, Miller's redacted statement removed any reference to Chatman or his existence. Chatman argues that severance should have been granted nonetheless because he was linked to Miller's statement by other evidence admitted at trial. This inferential incrimination argument is unavailing where, as here, the jury was properly instructed that Miller's confession was not to be considered against any of the other defendants. We find that the requirements of *Richardson* have been met and affirm the district court's denial of severance.

## II. SUPPRESSION

■ Chatman appeals an order denying his motion to suppress cocaine base seized

---

1. The officer testified:

> Mr. Miller stated he departed Los Angeles, California on 2–16 of '91 in a vehicle. And that he rode here to Oklahoma City in that vehicle or to Midwest City, Oklahoma and arrived here on 2–17 of '91 about noon. Miller said upon arrival that a subject named Levi departed the apartment number 9 at 457 North Air Depot enroute to Los Angeles, California. Miller said that two unidentified black females had transported him to the Will Rogers World Airport in Oklahoma City, Oklahoma for the purpose of renting a car, in which in fact, was rented. He said that there was crack cocaine in the trunk of the car that he rode here in from California. And that after the car was rented at the airport, that the new rental car

> was loaded with the crack cocaine out of the other rental car, the blue Lincoln. He said that about six-fifteen on the day he was arrested, he had left apartment number 9 and gone to another apartment where a female gave him some clothing. He said upon his return, there was a black female in the apartment at number 9 on Air Depot and that the cocaine, or the black female was there to purchase the cocaine and that he knew that cocaine would be purchased. He stated that he then left the apartment and went and got into the trunk of the car which had been rented at the airport on that same day. And retrieved the quantity of crack cocaine. Then returned to apartment number 9 where he said that the black female then departed the apartment.

during a warrantless search of the trunk of his rental car. The car, a white Mercury Cougar, was parked in the parking lot of the apartment building where Chatman was arrested. Following an evidentiary hearing, the district court found that there was probable cause for the search and held that the search fell under the automobile exception to the Fourth Amendment bar against warrantless searches. We review the district court's factual findings under the clearly erroneous standard and view the evidence in the light most favorable to the district court's findings. *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir.1992). The determination regarding the reasonableness of the search is a question of law which we review de novo. *Id.*

■ Under the automobile exception, a warrantless search is permissible if there is probable cause to believe that the vehicle contains contraband. *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985); *United States v. Crabb*, 952 F.2d 1245, 1246 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1981, 118 L.Ed.2d 579 (1992). After reviewing the record, we conclude that the officers had probable cause to search the vehicle.

The officers were working with a confidential informant who bought cocaine base from Chatman on February 17, 1991 at 457 N. Air Depot, Apartment No. 9 in Midwest City, Oklahoma. The informant was wired with a radio transmitter so that the officers surveilling outside the apartment building could monitor the conversation. During the process of the sale, Chatman left the apartment, retrieved something from the trunk of a blue Lincoln Town Car parked in the parking lot, and returned to the apartment. The informant reported that Chatman returned with cocaine base.

On February 19, 1991, the informant returned to the same location to again purchase cocaine base from Chatman under the same circumstances. This time, after Chatman agreed to the sale, Codefendant Ronnie Miller left the apartment and the officers saw him retrieve something from the trunk of the white Cougar and return to the apartment building. The informant reported that Miller placed cocaine base on the table when he returned to the apartment. The informant then left the apartment, ostensibly to get money for the purchase from her car, and the officers served a search warrant on the apartment. During the search, the officers found a set of car keys which they were told belonged to the white Cougar. They proceeded to search the Cougar where they discovered the cocaine base at issue. Based on the information obtained from their surveillance and the confidential informant, we affirm the district court's finding of probable cause and denial of the motion to suppress.

## III. SUFFICIENCY OF EVIDENCE

■ Appellant argues that, because there was insufficient evidence to support his conviction on all counts, the district court erred in failing to grant his motion for acquittal. To review the sufficiency of the evidence supporting a criminal conviction, we examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Grimes*, 967 F.2d 1468, 1472 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992).

First, Chatman contends that there was insufficient evidence to support his conviction on all counts because the accomplice testimony from the government's witnesses was neither credible nor corroborated. Chatman argues that the testimony was not credible because the accomplices had agreed to cooperate with the prosecution for their own benefit and because of inconsistencies in the testimony. We must rely on the district court's findings regarding witness credibility unless they are clearly erroneous. *Ibarra*, 955 F.2d at 1409.

■ The appellant's arguments are unavailing. The testimony was corroborated in part by a tape-recorded conversation in which the government's confidential informant negotiated to purchase cocaine from Mr. Chatman, by a police officer's testimony about the surveillance and arrest, and by a search warrant. Moreover, a conviction

based on accomplice testimony may be affirmed if the district court properly instructed the jury that accomplice testimony must be carefully scrutinized, weighed with great care, and received with caution. *See United States v. Shepherd*, 739 F.2d 510, 512–13 (10th Cir.1984). Here, the district court instructed the jury that "the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care." We find that the jury was properly instructed.

■ Second, Chatman contends there was insufficient evidence to support his conspiracy conviction because there is no record evidence that he agreed with anyone to distribute cocaine or that he benefitted from the alleged conspiracy. To establish a conspiracy, the government must show that two or more persons agreed to violate the law, the defendant knew of the essential objectives of the conspiracy, and the defendant knowingly and voluntarily participated in the conspiracy. *United States v. Sasser*, 971 F.2d 470, 477 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993). While an agreement need not be explicit and may be inferred from the facts and circumstances of the case, the evidence must show that the coconspirators' conduct was in some way interdependent. *See United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). Interdependence is shown if the defendant's conduct facilitated the endeavors of other coconspirators or the venture as a whole. *United States v. Horn*, 946 F.2d 738, 740–41 (10th Cir.1991). One does not become a participant in a conspiracy merely by associating with conspirators known to be involved in crime. *See United States v. Evans*, 970 F.2d 663, 669 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993).

Chatman contends that "the evidence established no more than mere association between alleged participants in dealing with *central figure.*" After reviewing the record,

we disagree. Five government witnesses testified about Chatman's role and participation in the conspiracy, all of whom identified Chatman as a major source of the cocaine. The testimony revealed a recurring pattern of activity whereby Chatman's coconspirators would obtain cocaine from Chatman in Los Angeles, transport the cocaine to Oklahoma where it was cooked into cocaine base, sell the cocaine in Oklahoma City, and then use the proceeds to buy more cocaine from Chatman. One witness testified to having personally obtained cocaine from Chatman and paying him directly. There was testimony that this cycle was repeated several times before the conspirators were arrested. We find that the evidence regarding Chatman's conduct, which facilitated other coconspirators' endeavors and the overall venture, was sufficient to support his conviction on all counts.

## IV. HEARSAY

■ At trial, Chatman objected to the following seven exhibits as hearsay: two apartment rental receipts ("Exhibits 18 and 19"); one customer copy of a money order ("Exhibit 20"); a quitclaim deed ("Exhibit 22"); a car rental receipt ("Exhibit 23"); a Cellular One call record ("Exhibit 24"); and an American Express receipt ("Exhibit 25"). The district court judge admitted Exhibits 24 and 25. He excluded the other five, but allowed limited testimony on those five for the purpose of establishing a connection between the coconspirators. On appeal, Chatman argues that the admitted exhibits and the testimony constituted inadmissible hearsay.

■ The decision to admit or exclude evidence is within the sound discretion of the trial court and we review only for an abuse of discretion. *United States v. Johnson*, 971 F.2d 562, 571 (10th Cir.1992). We accord heightened deference to a trial court's ruling on a hearsay question. *Id.*

■ Exhibit 25 and the testimony regarding Exhibits 18, 19, 20, 22, and 23 were properly admitted because they are not hearsay. An out-of-court statement is hearsay only if it is offered to prove the truth of the

matter asserted therein. *United States v. Peveto,* 881 F.2d 844, 853 (10th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); Fed.R.Evid. 801(c). Exhibit 25 was entered through the testimony of a police officer who found the exhibit documents during searches of Codefendant Vickie Hogg's property. The same officer testified about the excluded exhibits. The officer identified Exhibit 25 as an American Express receipt. He was asked what information appeared on the receipt and testified: "The credit card number, it shows a name of Jay Chatman with the card being valid from .6 of '90 through 6 of '92. And looks like Kids Foot Locker in Culver City, California." For each of the other exhibits, his testimony was limited to whether he had found a document with a certain address on it during the search.[2]

With respect to each of these exhibits, the testimony and exhibit were offered to show that Codefendant Vickie Hogg possessed a document containing either a coconspirator's name or an address that had been linked to other coconspirators through separate evidence. The evidence, therefore, was offered to link the coconspirators together rather than to prove the truth of the matters asserted in the documents (*e.g.* that Jay Chatman purchased something at the Kids Foot Locker, that an apartment was rented, that a money order had been sent, that Chatman owned property identified in a deed, or that a car had been rented). We find that the evidence was not hearsay and therefore was properly admitted. *See Peveto,* 881 F.2d at 853–54.

■■■ Exhibit 24 was admitted in its entirety. It contained a call record of calls made on a Cellular number connected to Codefendant Vickie Hogg, as well as a Credit Application and Cellular Service Agreement. On appeal, Chatman only challenges admission of the call record—which was admitted to show that calls were made from that Cellular number to a phone number in Los Angeles linked to Chatman—as hearsay. We conclude that the district court did not abuse its discretion by admitting the call record under the business records exception to the hearsay rule. *See Johnson,* 971 F.2d at 571; Fed.R.Evid. 803(6). The call record was admitted through a witness employed by Cellular One as a District Client Service Supervisor. She testified that the call record was kept in the normal course of business with Cellular One, used for billing purposes, and created routinely based on the amount of air time a customer used during the billing period.

## V. SENTENCING

■■■ Chatman contends that the district court erred in determining the amount of cocaine used to compute his base offense level and in enhancing his offense level for obstruction of justice, possessing a weapon, and for his role in the offense. We review the district court's factual findings for clear error and its interpretation of the United States Sentencing Guidelines ("U.S.S.G.") de novo. *United States v. Pinedo–Montoya,* 966 F.2d 591, 595 (10th Cir.1992). The application of the Guidelines to the facts is entitled to due deference. *United States v. Rutter,* 897 F.2d 1558, 1560 (10th Cir.), *cert. denied,* .498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

■■■ First, Chatman challenges the amount of cocaine the district court used to compute his base offense level, arguing that the amount was ultimately based on trial testimony that lacked credibility and specificity. The government must prove the drug amount by a preponderance of the evidence. *United States v. Cook,* 949 F.2d 289, 295 (10th Cir.1991). Following an evidentiary hearing, where the district court heard testimony from a Drug Enforcement Administration Special Agent and the probation officer who prepared the presentence report, the district court determined that an amount in

---

**2.** He was asked: "[D]id you find two receipts that showed the address of 3137 West 139th Street, Hawthorne, California?"; "[D]id you find a money order customer copy with a person's name and address 500 Southwest 93rd Street?"; "Did you find two deeds in that apartment, or in that location? ... [w]ere the addresses 151 East 99th Street in Los Angeles and 1458 Gladwick in Carson, California?"; and "[D]id you find an Alamo Rent–A–Car receipt signed by Pamela Banes Chatman, giving the address of 704 East Imperial Highway, Los Angeles, California?"

excess of fifteen kilograms of cocaine base was attributable to Chatman. The judge stated that, while the exact amount was uncertain and could have ranged from twenty-four to fifty-one kilograms, the evidence strongly supported a finding in excess of fifteen kilograms, which supports a base offense level calculation of 42 under U.S.S.G. § 2D1.1(c)(1). United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(1) (Nov. 1992). We conclude that this finding was not clearly erroneous. Even if there were discrepancies as to the total amount attributable to Chatman, the testimony of several witness supports a finding that it exceeded fifteen kilograms. We give due regard to the district court's opportunity to judge the credibility of witnesses on whose testimony it relied. 18 U.S.C. § 3742(e); *Cook*, 949 F.2d at 296.

■■■■ Second, Chatman argues that the district court erroneously imposed a two-level increase for obstruction of justice pursuant to § 3C1.1. The increase was based on an arresting officer's testimony that Chatman flushed cocaine base down the toilet when the officers entered the apartment to execute the search warrant. Disposing of a controlled substance during an official drug investigation constitutes an obstruction of justice under § 3C1.1. *See Cook*, 949 F.2d at 296–97.

Chatman does not deny flushing something down the toilet, but asserts that there is insufficient evidence to prove that it was cocaine base because the flushed items were never retrieved. He further claims that the evidence is insufficient to support a reasonable inference that it was cocaine base. We review the district court's determination that the appellant obstructed justice for clear error. *United States v. Hernandez*, 967 F.2d 456, 458 (10th Cir.1992). The district court relied on an arresting officer's testimony that on entering the apartment to execute the search warrant, he went to the bathroom where he saw Mr. Chatman holding three packages similar to the ones containing cocaine base that the confidential informant had bought from Chatman two days earlier. The officer saw Chatman drop them into the toilet and ordered him to stop, raise his hands, and move away from the toilet. Chatman proceeded to flush the toilet and turned around and grinned at the officer who then ordered him to lay on the floor. The officer testified that he then seized 1.5 grams of cocaine base found on the bathroom vanity top next to the toilet. We conclude that the evidence supports at least an inference that the flushed items were cocaine base and that the district court's upward adjustment was not clearly erroneous.

■■■ Appellant next contends that the district court erred by imposing a two-level increase for possessing a firearm during the commission of the offense. The police found a .357 magnum handgun in a bedroom dresser in the apartment where Chatman negotiated a sale with the government's confidential informant and was arrested. U.S.S.G. § 2D1.1(b)(1) prescribes a two-level increase in the base offense level for drug trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed." The commentary to § 2D1.1 states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n. 3).

Chatman does not dispute that the gun was present, but argues that possession under § 2D1.1(b)(1) requires a showing that the gun was on his person or within his immediate reach and that he knew the gun was there. He asserts that, absent this showing, nothing links him to the weapon. Our prior rulings construing § 2D1.1(b)(1) and its commentary do not support this interpretation. We have held that possession under § 2D1.1(b)(1) does not require a finding of scienter, *see United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991), and that the trial judge may "enhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the offense." *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir.1992) (guns seized from kitchen and master bedroom were in adequate proximity). We conclude that the government has met its burden of proving by a preponderance of the evidence that the gun was proximate to the

offense, and that Chatman has presented no evidence that it is "clearly improbable" that the gun was connected to the offense. *See id.* at 647–48. We therefore affirm the district court's two-level increase.

◼ Finally, Chatman claims that the district court erroneously imposed a two-level increase for his role in the conspiracy because the supporting testimony lacked credibility. Section 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." U.S.S.G. § 3B1.1(c). The appellant's role in the offense is a question of fact that we review for clear error. *Hernandez,* 967 F.2d at 458. The district court heard testimony at both the trial and the sentencing hearing identifying at least four people who distributed cocaine for Mr. Chatman or whose activity was otherwise overseen by Chatman. Giving due regard to the district court's assessment of the witnesses' credibility, we affirm the two-level increase.

## VI. NEW TRIAL

◼ Mr. Chatman appeals the district court's order denying his motion for a new trial based on newly discovered evidence without conducting an evidentiary hearing. Chatman based the motion on two affidavits in which one of the government's chief witnesses, Raymond Johnson, recanted his trial and Grand Jury testimony. We review the denial of a motion for new trial for an abuse of discretion. *United States v. Page,* 828 F.2d 1476, 1478 (10th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987).

◼ A motion for a new trial is not viewed with favor and should be granted with great caution. *United States v. Thornbrugh,* 962 F.2d 1438, 1443 (10th Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 220, 121 L.Ed.2d 158 (1992). It is well established that newly discovered evidence warrants a new trial only if the defendant shows that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeach-ing; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. *United States v. Stevens,* 978 F.2d 565, 570 (10th Cir.1992). Where, as here, the new evidence is a recantation of trial testimony, "the trial court must first be satisfied that the challenged testimony was actually false." *United States v. Bradshaw,* 787 F.2d 1385, 1391 (10th Cir.1986).

◼ To make this determination, the trial court ordinarily must hold an evidentiary hearing to determine the credibility and effect of the recantation. *Page,* 828 F.2d at 1478. The determination of a witness's credibility is a matter for the trial court rather than the appellate court, and we must be able to "discern from the record whether or how the trial judge evaluated the credibility of [a witness's] recantation." *United States v. Ramsey,* 726 F.2d 601, 605 (10th Cir.1984) (*Ramsey I*). In *Ramsey I,* the trial court denied the defendant's motion for a new trial without conducting an evidentiary hearing and without making any findings of fact. *Id.* at 604. It was only after we remanded the case to the district court to make the necessary findings that we affirmed its denial of the motion. *United States v. Ramsey,* 761 F.2d 603, 604 (10th Cir.1985) (*Ramsey II*), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). On remand, the district court held an evidentiary hearing at which the witness repudiated his recanting affidavit and testified that his trial testimony was true. *Id.*

In its order denying the motion, the district court acknowledged that it ordinarily must conduct an evidentiary hearing to evaluate a recantation, but it determined that a hearing was not required under the circumstances of this case. Johnson had recanted his testimony in signed affidavits dated October 30, 1991. On November 12, 1991, he signed an affidavit repudiating his prior recantation, stating that he had testified truthfully about Chatman's involvement and signed the prior affidavits out of fear.

The repudiating affidavit explains that Chatman and Codefendants Ronnie Miller,

Charles McIntyre, and Kenneth Wright approached Johnson in his prison cell to discuss why he had testified against Chatman and Miller. It states, in part:

> They proposed I sign a statement saying I had given false testimony at trial. They went and wrote up something, brought it back, and let me read it. I signed the statement not because it was true but because I felt it was the only way to keep them from harrassing [sic] me and jumping me, then or later. The next day, one of them commented, "Did my son still live on Crenshaw?" I took this as a potential threat to my son because they knew where he lived.

The timing of Johnson's repudiating affidavit, which was signed more than two months before Chatman filed his motion for new trial, convinced the court that Johnson informed prison authorities or the United States Attorney of the confrontation as soon as possible.

Based on this evidence, the district court determined that Johnson's trial testimony was truthful and that his recantation was coerced and did not warrant a new trial. The district judge also concluded that the relevant witnesses had been dispersed to different correctional facilities and that no purpose would be served by requiring them to appear for an evidentiary hearing. We conclude that, even absent an evidentiary hearing, the record is adequate for us to discern that the district court evaluated the credibility of Johnson's recantation and we find no abuse of discretion.

**AFFIRMED.**