**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 25 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

HECTOR HINOJOSA Gonzalez, a/k/a
Hector Hinojosa, Antonio Rameorz
and Manuel Gonzalez,

        Defendant - Appellant.

No. 01-1425
(D.C. No. 99-CR-300-S)
(D. Colorado)

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MANUEL GUILLERMO CARRILLO,
a/k/a "Psycho," and "Memo,"

        Defendant - Appellant.

No. 01-1439
(D.C. No. 99-CR-300-S)
(D. Colorado)

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

RAUL ATAYDE, a/k/a "Bam Bam,"

        Defendant - Appellant.

No. 01-1453
(D.C. No. 99-CR-300-S)
(D. Colorado)

**ORDER AND JUDGMENT** [*]

Before **HENRY** , **MURPHY** , and **O'BRIEN** , Circuit Judges.

The three appellants, Raul Atadye, Manuel Guillermo Carrillo, and Hector Hinojosa Gonzalez, were part of a Denver-area gang that operated a large-scale illegal narcotics distribution system. Each was convicted by a federal court jury of multiple counts of conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, and methamphetamine in violation of 21 U.S.C. § 841. We have consolidated their appeals for the purpose of this disposition. Together, they raise ten issues of alleged error by the district court, attacking both the guilt and sentencing phases of the trial. For the reasons detailed below, we affirm.

## I. BACKGROUND

The background of this case is well-known to both parties and is laid out in the district court's fifty page Memorandum Opinion and Order, see United States v. Carrillo, et al. , No. 99-CR-300-S (Dist. Ct. Memorandum Opinion and Order filed Nov. 20, 2000), and in the transcripts of the proceedings before the district

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

court attached by the appellants as brief exhibits. We summarize the facts here and discuss certain facts in further detail in our subsequent analysis.

In January 1997, through a joint investigation by the Federal Bureau of Investigation and the Denver, Colorado Police Department led by Jamie Aikens, acting in dual capacities as a Denver Police Officer and an F.B.I. Special Agent, the police learned that Mr. Carrillo, a/k/a "Psycho," was the founder and leader of a gang known as the "Mexican Criminal Mafia Sureno 13." The police further learned that Mr. Carrillo engaged in violent crimes, including armed robberies to obtain drugs and drug proceeds, and that Mr. Carrillo obtained his cocaine from Texas and distributed the drugs in Colorado, Kansas, and Utah. During the course of the investigation, the police learned that among Mr. Carrillo's gang associates in the Sureno 13 gang were Mr. Atadye and Mr. Gonzalez. An undercover officer later purchased methamphetamine from Mr. Atadye, and learned that Mr. Gonzalez supplied illegal drugs to Mr. Carrillo.

In April 1999, upon the government's motion, United States District Court for the District of Colorado Judge Zita L. Weinshienk issued two orders authorizing the interception of wire and electronic wire communications on a cellular telephone and digital display paging device used by Mr. Atadye. In May 1999, Judge Weinshienk issued an additional order authorizing the interception of wire communications on a cellular phone used by Mr. Carrillo. The investigation

leading up to the two orders was chronicled in the supporting affidavits of Officer Aikens, which included factual recitations detailing the use of numerous confidential informants to gather information concerning the Sureno 13 gang. Based on information obtained in the over two and a half year investigation, the government, in September 1999, filed a 35-count indictment against fourteen defendants connected to Mr. Carrillo's organization, including Mr. Carrillo, Mr. Atadye, and Mr. Gonzalez.

Mr. Carrillo, Mr. Atadye, and Mr. Gonzalez were eventually scheduled for a joint trial before United States District Court for the District of Colorado Judge Daniel B. Sparr and a federal court jury. Prior to trial, the three defendants moved to suppress the government's evidence derived from the court-ordered wiretaps. The district court denied the suppression motions. The case went to trial.

Following the trial, the jury convicted Mr. Carrillo, Mr. Atadye, and Mr. Gonzalez of (1) conspiracy to distribute cocaine and cocaine base and methamphetamine in violation of 21 U.S.C. § 846; (2) distribution and possession with intent to distribute one or more controlled substances in violation of 21 U.S.C. § 846; and (3) the use of a communications facility to facilitate commission of drug offenses in violation of 21 U.S.C. § 843(b). Each of the

three defendants was sentenced to a prison term in excess of three hundred months; the three defendants now appeal.

## II. DISCUSSION

The consolidated appeals combine to raise ten issues of alleged error, arguing that Judge Sparr erred by: (1) denying the motions to suppress because the government failed to satisfy the necessity requirements of 18 U.S.C. § 2518(c) and (3)(c); (2) denying Mr. Atadye's motion to dismiss the indictment for outrageous conduct in violation of his due process rights; (3) refusing to conduct additional wiretap hearings; (4) admitting evidence that Mr. Gonzalez threatened a trial witness; (5) admitting certain testimony at trial by a Police Officer Ramirez; (6) denying Mr. Carrillo's request for a continuance; (7) permitting the trial to continue after the prosecutor suggested at closing argument that certain, specified, individual jurors examine transcripts of wiretapped conversations; (8) permitting Mr. Carrillo to be convicted and sentenced on what are termed by Mr. Carrillo's counsel as "unfounded allegations" of which Mr. Carrillo was allegedly unaware; (9) permitting a government witness with a history of mental health illness to testify against the defendants; and (10) by permitting a conviction and sentence in part based on testimony by a witness who worked with Mr. Carrillo

that the witness was a "bounty hunter," which allegedly violated Mr. Carrillo's due process rights. We address each contention in turn.

### 1. Motion to Suppress

The appellants argue that the affidavits supporting the applications for the three wiretaps failed to satisfy the "necessity" requirements set forth in 18 U.S.C. § 2518(1)(c) and (3)(c), under which the supporting affidavits must have had "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Id. "[W]e review for an abuse of discretion a district court's determination that a wiretap was necessary." United States v. Ramirez-Encarnacion, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002). "[W]e review de novo whether a 'full and complete statement' was submitted meeting section 2518(1)(c)'s requirements." Id. (internal quotation marks omitted). "A defendant bears the burden of proving that a wiretap is invalid once it has been authorized." Id. Applying these standards, we have reviewed the district court's order and the several hundred pages of underlying affidavits and, for substantially the same reasons as those set forth at pages 15-45 of the district court's November 20, 2000 Memorandum Opinion and Order, we conclude that the district court did not err in denying the motion to suppress.

### 2. Motion to Dismiss the Indictment

The appellants, particularly Mr. Atayde, argue that the district court erred in denying the motion to dismiss the indictment, asserting that the government continued the investigation for the improper purpose of increasing their sentences, and that this conduct was so outrageous as to deny them due process of law. "[Criminal] defendants have the burden of proving outrageous government conduct . . . and we review this issue de novo, with factual findings reviewable under the clearly erroneous standard." United States v. Diaz, 189 F.3d 1239, 1245 (10th Cir. 1999) (internal quotation marks and citations omitted).

Although we have acknowledged the existence of such a defense, we have also acknowledged that the defense rarely will be established. In Diaz, we held "[t]he defendants have a very high hurdle to clear: 'The outrageous conduct defense . . . is an extraordinary defense that will only be applied in the most egregious circumstances. In order to prevail, the defendant must show that the challenged conduct violated notions of 'fundamental fairness' and is 'shocking to the universal sense of justice.'" Id. at 1245 (quoting United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994) (internal quotation marks omitted). We have never overturned a conviction on the ground of outrageous government conduct. See Pedraza, 27 F.3d at 1521 n.3 (noting this fact); see generally United States v.

Scull, 321 F.3d 1270 (10th Cir. 2003) (a recent decision of this court rejecting a defendant's outrageous conduct claim).

In United States v. Mosley, 965 F.2d 906 (10th Cir. 1992), we identified factors typically associated with such a defense: (1) excessive government involvement in the creation of a crime; or (2) significant government coercion to induce a crime. Government involvement would be excessive, we held, if the government engineered and directed the criminal enterprise from start to finish. See id. at 911. The appellants do not contend that the government created the crime or induced them to sell drugs. When a defendant cannot show the government induced his conduct, this court has rejected the outrageous conduct defense. See United States v. Johnson, 130 F.3d 1420, 1430 (10th Cir. 1997) ("The government did not induce Johnson to become involved in drug distribution for the first time, nor did it substantially coerce him into committing the crime.").

Mr. Atayde cites Mosley in support of his argument that the government should not have continued to purchase drugs from him. However, in Mosley and its progeny, we have made clear that Mosley was not intended to preclude the type of undercover operation at issue in this case:

> It is not outrageous for the government to infiltrate an ongoing criminal enterprise, or to induce a defendant to repeat, continue, or even expand previous criminal activity. In inducing a suspect to repeat or expand his criminal activity, it is permissible for the government to suggest the illegal activity, provide supplies and expertise, and act as both a supplier and buyer of illegal goods.

Pedraza, 27 F.3d at 1521 (emphasis supplied and internal citations omitted).

Nor has Mr. Atayde denied that he sold the drugs in question. The appellants' argument that they, as criminal defendants, cannot be prosecuted for crimes that they concede that they committed, is somewhat remarkable. The Supreme Court has acknowledged that the prosecution is entitled to decide when enough evidence has been gathered and when to file charges. See United States v. Lovasco, 431 U.S. 783, 792-93 (1977) ("The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest."). In rejecting substantially this same argument, we have stated:

> Law enforcement officials are often justified in increasing the scope of criminal activity in a sting operation, especially when attempting to ensnare those persons higher up on the distribution ladder who are ultimately responsible for the supply of drugs.

United States v. Lacey, 86 F.3d 956, 965 (10th Cir. 1996) (emphasis supplied). This appears to be precisely what the government was doing in this case. The undercover officer had an established relationship with Mr. Atayde, who worked at Mr. Carrillo's direction. The government was using that relationship in an attempt to gather evidence against Mr. Carrillo and his suppliers. Mr. Atayde concedes that the government "may have had the legitimate purpose of furthering

-9-

the investigation with regard to others," Aplt Atayde Br. at 54, but nonetheless argues that by charging him with the transactions, the government committed outrageous conduct. However, because of Mr. Atayde's close relationship to Mr. Carrillo, it seemingly would have been difficult to impossible to arrest Mr. Atayde without aborting the investigation. Thus, continued dealing with Mr. Atayde appears to have been necessary to further the investigation of the others involved in the conspiracy.

Mr. Atayde cites United States v. Harris, 997 F.2d 812, 819 (10th Cir. 1993), for the proposition that it would be outrageous conduct for the government to "rely on a known addiction to carry out multiple transactions with the primary purpose of stacking charges. . . ." But these are not the facts before us. Mr. Atayde does not claim to be a drug addict, much less claim that the government knew him to be an addict.

The government may not carry out the transactions for the purpose of "stacking charges." Id. In Harris, we held that "[a]bsent a specific investigatory purpose," the government could not "continue to conduct these transactions *ad infinitum* thereby constantly increasing the charges, which necessarily increases the attendant mandatory sentence length." Id. at 818-19 (italics in original). Here, however, the well-documented purpose of the continued dealings with Mr. Atayde was to gather evidence against Mr. Carrillo and his suppliers. See id. at

819 (holding that the multiple transactions in that case served a "legitimate investigatory function."). The district judge made a factual finding that the government's investigation was motivated by the "legitimate purpose" of identifying the sources of narcotics. Gonzalez Rec. vol. 12, at 19-20. Given the standard of review, and the documented evidence of the government's attempts to use the additional evidence towards a legitimate purpose, we hold that the district court's ruling was not erroneous.[1]

### 3. Not Conducting Additional Wiretap Hearings

During the trial, Mr. Carrillo filed a motion alleging that trial testimony showed that the Colorado National Guard illegally participated in the wiretap investigation, and asking that the court allow him to call two witnesses outside the jury's presence. The district court granted the motion and heard testimony from two members of the Colorado Air National Guard. The witnesses testified that they were assigned to provide support to the Metro Gang Task Force as part of a counter-drug program, that they had no administrative duties, that they did not monitor the wiretaps, and that were not present in the room where the wiretaps were being recorded. One of the witnesses testified that her main task

---

[1] We decline in this order and judgment to delineate what set of facts would constitute a violation by the government of the rule against stacking. We leave resolution of that question for another day.

was to transcribe tapes that were given to her. At the close of the two witnesses' testimonies, the court stated, "I am not going to rehear the wiretap motion. It's already been decided." Gonzalez Rec. vol. 33, at 3944.

On appeal, Mr. Carrillo argues that the district court should have conducted further hearings. However, because neither Mr. Carrillo nor the other two appellants identify evidence in the record showing that they made this request to the district court, our review is for plain error. See, e.g., United States v. Brown, 376 F.3d 1151, 1155 (10th Cir. 2003). We may "use our discretion to reverse unobjected-to error on plain error review if we find four elements: (1) error; (2) that is plain (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted). We do not see how the district court erred, but even if we did, the error is certainly not one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

### 4. Admitting Evidence that Mr. Gonzalez Threatened a Witness

Next, the appellants argue that they were prejudiced by the testimony of Mark Jones, a cooperating defendant who testified that Mr. Gonzalez threatened a witness named Brandy Jones, including suggesting that Mr. Jones "shoot her," Rec. vol. 23, 1892-93, and making a gesture with his hand in the form of a pistol

at a court hearing.    The district court, over Mr Gonzalez's objection, admitted Mr. Jones's testimony on the grounds that evidence of the threats could be evidence of consciousness of guilt.  The parties agree that we review the district court's decision for abuse of discretion.    See United States v. Smith  , 629 F.2d 650, 651 (10th Cir. 1980).  Applying that standard, we do not overturn the district court's ruling.  See id.  at 651-52 ("[e]vidence of threats to a prosecution witness is admissible as showing consciousness of guilt if a direct connection is established between the defendant and the threat").

### 5.    Admitting Officer Ramirez's Testimony

Officer Adolpho Ramirez testified at trial regarding his understanding of terms heard on a recorded conversation.  At various points during Officer Ramirez's testimony, counsel for one or more of the defendants objected, citing, among other grounds, hearsay.  The district court overruled the objections.  We review the ruling on the admissibility of Mr. Ramirez's testimony aware that evidentiary rulings are ordinarily committed to "the sound discretion of the trial court," and that we "accord heightened deference to a trial court's ruling on a hearsay question."    United States v. Chatman   , 994 F.2d 1510, 1515 (10th Cir. 1993).

"A witness may base his testimony upon his perceptions of conversations and, thus, may clarify conversations that are abbreviated, composed of unfinished sentences and punctuated with ambiguous references to events that were clear only to the conversation participants." United States v. Sneed, 34 F.3d 1570, 1581 (10th Cir. 1994). "The accuracy of those perceptions is a question for the jury." Id. Accordingly, the district court did not abuse its discretion by leaving it to the jury to weigh Officer Ramirez's testimony.

**6.    Denial of Mr. Carrillo's Continuance Request**

In January 2001, five weeks prior to the scheduled February 20, 2001 joint trial date, Mr. Carrillo, then represented by counsel (his third in less than two years), moved to represent himself. In the hearing on this motion, Mr. Carrillo stated to the district court that he would not use self-representation as an excuse to "attempt to delay or obstruct these proceedings." Carrillo Rec. vol. 7, at 37. Nonetheless, at the pre-trial conference, Mr. Carrillo moved to continue the trial on the ground that he needed additional time to review discovery materials. The district court denied the motion.

We review denial of a motion to continue a trial "for abuse of discretion, assigning error only if the district court's decision was arbitrary or unreasonable and materially prejudiced the [defendant]." United States v. McNeely, 69 F.3d

1067, 1076 (10th Cir. 1995) (internal quotation marks omitted). On appeal, Mr. Carrillo concedes that he had "indicated he would be able to proceed pro se on the scheduled trial date," but alleges that his inability to obtain access to certain documents while incarcerated required a continuance. Aplt Carrillo's Br. at 43. Given Mr. Carrillo's previous assertion to the district court and our deferential standard of review, we hold that the district court's denial of the motion for continuance was not an abuse of discretion.

### 7.    The Prosecutor Suggestion at Closing Argument

During the discussion by the prosecutor in closing argument of whether Mr. Gonzalez delivered cocaine to Mr. Carrillo, the prosecutor told the jury, "And if you have any doubt about that, ladies and gentlemen, I am going to ask juror No. 1 in the corner there, just remember May 18th. Okay. That's your job. May 18th. Go back and look at the calls from May 18th." Gonzalez Rec. vol. 32 at 3658. The prosecutor then suggested, "I am going to ask you to remember certain transcript numbers, so juror No. 2, your job is to–," id. at 3659, whereupon the district court interrupted, stating, "Let's not individualize the jurors, please." Id. Although Mr. Carrillo did not object at trial on this point, Mr. Carrillo argues that we should reverse the convictions because the prosecutor's comments "showed an obvious error of prosecutorial misconduct, and one that would undermine the

fairness of the trial and result in a miscarriage of justice." Aplt Carrillo's Br. at 47 (internal quotation omitted).

Generally, "[t]his court reviews *de novo* whether prosecutorial misconduct occurred, which is a mixed question of law and fact." United States v. Toles, 297 F.3d 959, 972 (10th Cir. 2002) (italics in original). However, here our review is for plain error since no objection was lodged at trial on this point. See Brown, 376 F.3d at 1155. The government clearly "erred in singling out a juror by name during closing arguments," Toles, 297 F.3d at 972, but given the district court's corrective remark and the overwhelming evidence of the appellants' guilt presented to the jury, we hold that the error did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings," Brown, 376 F.3d at 1155. We therefore may not reverse on this issue. See id.

### 8. "Unfounded Allegations" Claim

Mr. Carrillo argues that we should remand for re-sentencing because he lacked notice of "unfounded allegations" made by the prosecutor at sentencing, against which he was unprepared to defend. Aplt Carrillo's Br. at 49. At the sentencing hearing, the guideline range was established as 360 months to life imprisonment. In addressing the court, the prosecutor observed that Mr. Carrillo was apparently insulted by her description of him as a "small fish," and the

prosecutor clarified that she did not think that Mr. Carrillo was "small fish" in Colorado. Carrillo Rec. vol. 8, at 26-27. The court later made clear that it would not rely upon this comment:

> as far as his offense being called a small fish in court, that's a matter that has to do with potentially inappropriate comments by the prosecutor. Unfortunately, it is not a matter which – for which he has any redress at this point in time, but I will say it's not a matter that the Court would consider under any circumstances. <u>The prosecutor's opinion of the defendant's relative standing in the hierarchy of crime in the United States is not this Court's – for this Court nor is it for the government to make those opinions clear to the Court</u>. And my position is that you are not attempting to argue that one way or another.

<u>Id.</u> at 29 (emphasis supplied). The prosecutor then agreed that her "opinion about [Mr. Carrillo] personally is irrelevant." <u>Id.</u> In rejecting the prosecution's request for a life sentence, the court instead imposed a sentence of 720 months. In doing so, the court made clear that the sentence was based upon "the aggravated factors involved in this offense," including Mr. Carrillo's role as a leader and organizer, the significant quantities of controlled substances (4,651 kilograms), Mr. Carrillo's possession of firearms in committing the crimes, and Carrillo's significant criminal history (Category VI).

Because Mr. Carrillo did not object before the sentencing court on this issue, our review, as discussed above, is for plain error. The record is clear that the sentencing court disregarded the prosecutor's remarks in imposing the

-17-

sentence. We therefore do not see how the prosecution's suggestion affected Mr. Carrillo's "substantial rights, or seriously affects the fairness, integrity, or public reputation of judicial proceedings." Brown, 376 F.3d at 1155.

**9.      Testimony by Witness with History of Mental Health Illness**

Mr. Carrillo further contends that the trial court denied him due process by admitting the testimony of co-defendant Emiliano Licon, who admitted on cross-examination that he uses alcohol and various illegal drugs, experiences problems with his memory, suffers from depression, and has been prescribed a variety of medications for his psychological problems. See Rec. vol. 22 at 1652-1704. Mr. Carrillo argues that Mr. Licon's psychological problems rendered Mr. Licon unstable, and appears to suggest that the problems rendered Mr. Licon's testimony inadmissible.

Because Mr. Carrillo has failed to point to record evidence that he objected to Mr. Licon's testimony, our review, as explained above, is for plain error. Mr. Carrillo's argument misses the mark because Mr. Licon's mental health issues go not to admissibility, but to weight. See United States v. Allen J., 127 F.3d 1292, 1294 (10th Cir. 1997) ("[T]he drafters of Rule 601 considered mental capacity not to be a question of competence, but to be a question particularly suited to the [trier of fact] as one of weight and credibility.") (internal quotation

marks omitted); see also Fed. R. Evid. 601 Advisory Committee's Notes (stating that mental incapacity goes to the weight and credibility of the witness). Indeed, the district court permitted cross-examination on the mental health issues, see Gonzalez Rec. vol. 22 at 1651-58, 1686-1704, instructed the jury that they could consider "the cross-examination of the witness going to his mental state" in assessing the "credibility of this witness's testimony," id. at 1732, and permitted Mr. Carrillo to call one of Mr. Licon's examining doctors, who testified regarding Mr. Licon's cognitive functioning and treatment. Accordingly, we hold that the admission of Mr. Licon's testimony was not error.

### 10. "Bounty Hunter" Comment

The last of the appellants' arguments is Mr. Carrillo's contention that the testimony of government witness Mario Rueda that Mr. Rueda works as a "bounty hunter" violated Mr. Carrillo's due process rights. Again, because Mr. Carrillo did not raise an objection at trial, our review is for plain error. Here, we need not address this claim in much depth. Mr. Carrillo nowhere explains how the district court's permitting Mr. Rueda to offer this answer, which we note was given in response to Mr. Carrillo's cross-examination, constituted error. Accordingly, we hold that the district court, in permitting the guilt and sentencing phases of the trial to proceed after Mr. Rueda's comment, did not commit plain error.

-19-

### III. CONCLUSION

For the reasons detailed above, we **AFFIRM** the decision of the district court. Appellants' motion to supplement the record on appeal filed October 3, 2002, is granted.

Entered for the Court

Robert H. Henry
Circuit Judge