**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OMAR SANCHEZ-PONCE,

Defendant-Appellant.

No. 11-4098
(D.C. No. 2:10-CR-00138 CW-PMW-2)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.[**]

Defendant-Appellant Omar Sanchez-Ponce appeals his conviction for a drug

trafficking offense, arguing that the district court should have granted his motion for a

new trial based on newly discovered evidence. The new evidence was a recantation letter

sent to the district court by Mr. Sanchez-Ponce's co-defendant, who testified at Mr.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the parties' briefs and the appellate record, this panel granted
the parties' request to waive oral argument and submit the case on the briefs. *See* Fed. R.
App. P. 34(f) and 10th Cir. R. 34.1(A)(2).

Sanchez-Ponce's trial. Because the trial judge reasonably concluded that the recantation was false, and that the co-defendant's original trial testimony was truthful in its material respects, we find no error in the district court's denial of Mr. Sanchez-Ponce's motion for a new trial, and accordingly **AFFIRM** the judgment entered against him.

## I. BACKGROUND

In a one-count indictment, the government charged Mr. Sanchez-Ponce and co-defendant Antonio Teran with a violation of 21 U.S.C. § 841(a), alleging that the two possessed with intent to distribute fifty grams or more of methamphetamine. Mr. Sanchez-Ponce pled not guilty and took his case to trial, while Mr. Teran pled guilty and testified at Mr. Sanchez-Ponce's trial.

At Mr. Sanchez-Ponce's trial, the government's key witnesses were an informant who had arranged a drug transaction with Mr. Teran, various police officers who tracked and apprehended Mr. Teran and Mr. Sanchez-Ponce as the transaction was carried out, and Mr. Teran himself. The trial testimony revealed that the government's informant learned Mr. Teran was involved in drug dealing early in January 2010. The informant made contact with Mr. Teran, expressing an interest in buying a substantial quantity of drugs. Mr. Teran represented that he could procure the drugs, and the two conversed over the phone to set up the drug buy. Eventually, it was agreed that the informant would buy the drugs from Mr. Teran on January 16, 2010. Mr. Teran, of course, did not know

2

that the informant was cooperating with the police during their dealings, or that the drug buy was really a sting operation.

On the morning of the sting, the police tracked Mr. Teran's movements. They followed him to a restaurant, where he met with a man they did not recognize at the time, but later identified as Mr. Sanchez-Ponce. Mr. Sanchez-Ponce got into Mr. Teran's car, and Mr. Teran dropped Mr. Sanchez-Ponce off at a house in Midvale, Utah. Instead of waiting for Mr. Sanchez-Ponce outside the house, Mr. Teran drove around the block for a short while before returning to the house to pick up Mr. Sanchez-Ponce. According to Mr. Teran, when Mr. Sanchez-Ponce got in the car, he took a bag of drugs out of his coat pocket and placed it on the floor in the back of the car. The police covertly followed Mr. Teran as he drove away with Mr. Sanchez-Ponce, and eventually pulled Teran's car over. Upon a search of Mr. Teran's car, they found the bag of drugs and arrested both Mr. Teran and Mr. Sanchez-Ponce. Although Mr. Sanchez-Ponce was in the car where the drugs were found, and even made incriminating statements which suggested he knew the drugs were in the car, Mr. Teran's testimony was the only direct evidence establishing that Mr. Sanchez-Ponce had personally possessed the drugs.

Mr. Sanchez-Ponce testified on his own behalf, claiming that he never knew anything about any drugs. Instead, Mr. Sanchez-Ponce said that he had been looking for work and a friend put him in touch with Mr. Teran, who was supposed to be taking Mr. Sanchez-Ponce to Provo, Utah to fill out a job application. According to Mr. Sanchez-

Ponce, he went to the house in Midvale to get keys to his brother's car, and did not know that any drugs were in Mr. Teran's car. The jury, apparently unconvinced by Mr. Sanchez-Ponce's testimony, returned a guilty verdict.

On the same day that the trial ended and the jury's verdict was entered, September 16, 2010, Mr. Teran wrote a letter to the district judge. In the letter, Mr. Teran recanted his trial testimony, saying that he had lied and that Mr. Sanchez-Ponce had nothing to do with the drugs found in his car. Four days later, on September 20, 2010, Mr. Teran wrote another letter to the court, this time repudiating his September 16, 2010 recantation letter. In the September 20, 2010 letter, Mr. Teran explained that he had initially recanted because he became fearful for his and his family's safety. Specifically, he was concerned that fellow prisoners might find out that he had testified against a co-defendant and they might inflict retribution for that betrayal. The letter of September 20, 2010 unequivocally stated that Teran's original trial testimony was indeed true. On September 28, 2010, Mr. Sanchez-Ponce moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, asserting newly discovered evidence (*viz.* Mr. Teran's September 16, 2010 letter) as the basis for a new trial.

The district court heard the attorneys' arguments on the motion on November 9, 2010. At that time, the court decided it wanted to hear Mr. Teran testify under oath as to the veracity of the letters he sent, and scheduled a second hearing so that Mr. Teran could appear. On November 18, 2010, Mr. Teran testified before the district judge. Shortly

4

after Mr. Teran's testimony began, the district judge became concerned that Mr. Teran should be represented by his attorney, and ordered a short recess so Mr. Teran's lawyer could appear.   The hearing resumed with Mr. Teran's counsel present, and Mr. Teran explained under oath that his recantation was a lie, and that his trial testimony was indeed true.

On December 2, 2010, the district judge held a hearing to rule on Mr. Sanchez-Ponce's motion for a new trial.  At that hearing, the district judge explained that he felt Mr. Teran's recantation of trial testimony (*i.e.* Teran's September 16, 2010 letter) was untruthful.  The district judge further expressed that he believed Mr. Teran's original trial testimony was truthful in its material respects.  As a result of these findings, the district judge denied Mr. Sanchez-Ponce's motion for a new trial.

A written order denying the motion was entered the same day (December 2, 2010).  A sentencing hearing was held on December 8, 2010, where the district court sentenced Mr. Sanchez-Ponce to 120 months' imprisonment, 60 months' supervised release, and a $100 special assessment fee.  The final judgment imposing that sentence was entered on December 20, 2010.  Mr. Sanchez-Ponce appeals from that judgment.[1]  The only

---

[1] A formal notice of appeal was not entered on the district court's docket until May 12, 2011, long after the time for appeal had run.  However, Mr. Sanchez-Ponce sent a letter to the court on December 10, 2010, expressing his desire to appeal the judgment entered against him.  Mr. Sanchez-Ponce's trial lawyer moved to withdraw from

(continued…)

5

contention on appeal is that Mr. Sanchez-Ponce's Rule 33 motion for a new trial should

have been granted.

## II. DISCUSSION

The district court had jurisdiction over this criminal case involving a federal crime

pursuant to 18 U.S.C. § 3231.  We have jurisdiction to review the district court's final

decision pursuant to 28 U.S.C. § 1291.  We review for abuse of discretion a district

---

(…continued)

representing Mr. Sanchez-Ponce on December 15, 2010, and in that motion noted that Mr. Sanchez Ponce wished to pursue an appeal of his case.

The district court construed Mr. Sanchez-Ponce's letter and his attorney's motion to withdraw as the "functional equivalent" of a formal notice of appeal.  *See Smith v. Barry*, 502 U.S. 244, 248 (1992) (holding that submissions to the court may be construed as the "functional equivalent" of a formal notice of appeal as long as they satisfy the requirements of Federal Rule of Appellate Procedure 3(c) and afford parties to the case adequate notice of the appeal).  We agree with the district court's construction, as the submitted documents adequately indicated Mr. Sanchez-Ponce's desire to appeal to the Tenth Circuit the judgment entered against him.

The documents constituting the notice of appeal were submitted after announcement of Mr. Sanchez-Ponce's sentence, but before the entry of final judgment on the docket.  Thus, pursuant to Federal Rule of Appellate Procedure 4(b)(2) we treat them as filed on the date of and after the entry of judgment.  *See United States v. Green*, 847 F.2d 622 (10th Cir. 1988) (en banc).  Therefore, Mr. Sanchez-Ponce's appeal is timely.

court's decision to deny a Rule 33 motion for a new trial. *United States v. Chatman*, 994 F.2d 1510, 1518 (10th Cir. 1993).

We begin by addressing Mr. Sanchez-Ponce's argument that the analysis of the Seventh Circuit in *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928), governs in this case. *Larrison* required a defendant moving for a new trial to show only a possibility, rather than probability, of a different verdict in light of new recantation evidence.

We disagree that *Larrison* serves as the controlling law here. *Larrison* has been expressly overruled in the Seventh Circuit. *United States v. Mitrione*, 357 F.3d 712, 718 (7th Cir. 2004). As to our own precedent, it is true that, in the past, the Tenth Circuit left open the possibility of using *Larrison's* approach where the government has actually offered false testimony. *United States v. Sinclair*, 109 F.3d 1527, 1532 (10th Cir. 1997). However, since *Larrison* was overruled by the Seventh Circuit, the Tenth Circuit has now expressly declined to adopt *Larrison's* approach for evaluating a motion for a new trial regardless of whether the government offered testimony that was actually false. *United States v. LaVallee*, 439 F.3d 670, 701 (10th Cir. 2006) (explaining the *Larrison* approach and "declin[ing] to adopt such an approach" even though the defendant argued that the government had offered false testimony).[2]

---

[2] In any event, even if we applied the former *Larrison* test, Mr. Sanchez-Ponce's argument fails that test. *Larrison* itself required the district court to be "reasonably well satisfied" that challenged testimony was actually false before allowing inquiry into the

(continued…)

Turning our attention to current Tenth Circuit precedent dealing precisely with the issue raised by Mr. Sanchez-Ponce, we conclude that the district court committed no error in denying Mr. Sanchez-Ponce's motion for a new trial.

> It is well established that newly discovered evidence warrants a new trial only if the defendant shows that:
>
> "(1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal."

*Chatman*, 994 F.2d at 1518 (quoting *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992)).

"Where, as here, the new evidence is a recantation of trial testimony, 'the trial court must first be satisfied that the challenged testimony was actually false.'" *Id.* (quoting *United States v. Bradshaw*, 787 F.2d 1385, 1391 (10th Cir. 1986)). After all, if the challenged testimony is not false, then any subsequent recantation would be "merely impeaching," failing the third prong of the five-prong test.

---

(…continued)

effect that recantation might have on a jury. *Larrison*, 24 F.2d at 87 ("[A] new trial should be granted when . . . [t]he [trial] court is reasonably well satisfied that the [original trial] testimony given by a material witness is false."). Because the district court concluded that Teran's original trial testimony was not false, Mr. Sanchez-Ponce's argument fails the earlier *Larrison* analysis itself.

Here, the district court was not satisfied that Mr. Teran's trial testimony was actually false. The district court said:

> The recantation is problematic, but as I understand the Tenth Circuit law, I'm required to first determine whether or not I believe the recantation. *And after hearing Mr. Teran testify at the hearing, I am satisfied that the material parts of his testimony at the trial were true, that the recantation was not true*, and that his subsequent letter reinforced that. I believe the cross-examination of him during the hearing that was held about his recantation adequately demonstrated that in material respects the testimony was consistent with the testimony he gave at trial. Now, there were some inconsistencies, as [Mr. Sanchez-Ponce's attorney] points out, but I don't believe that those inconsistencies would substantially change the nature of the testimony that he gave at trial, nor do I believe that they substantially changed the focus of the testimony that he gave that Mr. Sanchez-Ponce was the source of the drugs.

R., Vol. IV, at 558 (emphasis added).

In other words, the district court did not believe that Mr. Teran's original trial testimony was false in any material respect. Mr. Sanchez-Ponce does not challenge that factual finding as clearly erroneous, and instead argues that the two letters' impeachment value was so substantial that a new trial was warranted. However, under our precedent, the district judge *must* find that trial testimony was false in order to consider the effect that new evidence might have had on the jury. *Chatman*, 994 F.2d at 1518. Thus, based on the finding that Mr. Teran's original trial testimony was truthful in its material respects, the district court correctly concluded that Tenth Circuit precedent foreclosed the possibility of granting a new trial. The trial judge did not abuse his discretion in denying Mr. Sanchez-Ponce's motion.

9

\* \* \*

We **AFFIRM** the judgment entered against Mr. Sanchez-Ponce.

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge